# The Supreme Court of South Carolina

Jane Doe, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2015-001726

---

### ORDER

---

After careful consideration of the Respondent's petition for rehearing, the Court grants the petition for rehearing, dispenses with further briefing, and substitutes the attached opinions for the opinions previously filed in this matter.

s/ Donald W. Beatty                               C.J.

s/ John W. Kittredge                               J.

s/ Kaye G. Hearn                                   J.

s/ John Cannon Few                                 J.

s/ Costa M. Pleicones                            A.J.

Columbia, South Carolina
November 17, 2017

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Jane Doe, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2015-001726

---

## IN THE ORIGINAL JURISDICTION

---

Opinion No. 27728
Heard March 23, 2016 – Refiled November 17, 2017

---

## DECLARATORY JUDGMENT ISSUED

---

Bakari T. Sellers and Alexandra Marie Benevento, both of
Strom Law Firm, L.L.C., of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Solicitor
General Robert D. Cook, Deputy Solicitor General J.
Emory Smith, Jr., and Assistant Attorney General Brendan
Jackson McDonald, all of Columbia, for Respondent.

Richele K. Taylor and Thomas A. Limehouse, of the
Office of the Governor, both of Columbia, for Amicus
Curiae Governor Henry D. McMaster.

David Matthew Stumbo, of Greenwood and Barry J. Barnette, of Spartanburg, both for Amicus Curiae Solicitors' Association of South Carolina, Inc.

Meliah Bowers Jefferson, of Greenville, for Amicus Curiae South Carolina Coalition Against Domestic Violence and Sexual Assault.

Kevin A. Hall and M. Malissa Burnette, both of Columbia, for Amicus Curiae South Carolina Equality Coalition, Inc.

Leslie Ragsdale Fisk, of Greenwood, Tamika Devlin Cannon, of Greenville, and J. Edwin McDonnell, of Spartanburg, all for Amicus Curiae South Carolina Legal Services.

Lindsey Danielle Jacobs and Patricia Standaert Ravenhorst, both of Greenville; and Sarah Anne Ford, of Columbia, all for Amicus Curiae South Carolina Victims Assistance Network.

Alice Witherspoon Parham Casey, of Columbia, for Amicus Curiae Women's Rights and Empowerment Network.

---

**CHIEF JUSTICE BEATTY:** The Court granted Jane Doe's petition for original jurisdiction to consider whether the definition of "household member" in South Carolina Code section 16-25-10(3) of the Domestic Violence Reform Act and section 20-4-20(b) of the Protection from Domestic Abuse Act[1] (collectively "the

---

[1] The Acts define "household member" as:

(a) a spouse;
(b) a former spouse;
(c) persons who have a child in common; or
(d) *a male **and** female* who are cohabiting or formerly have cohabited.

Acts") is unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment[2] to the United States Constitution. Specifically, Doe contends the provisions are unconstitutional because neither affords protection from domestic abuse for unmarried, same-sex individuals who are cohabiting or formerly have cohabited. In order to remain within the confines of our jurisdiction and preserve the validity of the Acts, we declare sections 16-25-10(3) and 20-4-20(b) unconstitutional as applied to Doe.

## I.    Factual / Procedural History

This case arises out of an alleged domestic dispute between a former same-sex couple. Doe claims that she and her ex-fiancé cohabited between 2010 and 2015. Following the dissolution of the relationship, Doe moved out of the shared residence and relocated to Columbia.

On August 6, 2015, Doe contacted police to report that she was assaulted by her ex-fiancé the day before as she was leaving a Columbia hotel. On August 10, 2015, law enforcement was summoned to Doe's workplace after someone called regarding a disturbance in the parking lot. When the officers arrived, Doe claimed that her ex-fiancé and another individual followed her from her apartment to work. While no physical confrontation took place, Doe claimed that she felt threatened by her ex-fiancé's actions. Law enforcement filed incident reports for both events, the first was identified as "simple assault" and the second was identified as "assault-intimidation."

---

S.C. Code Ann. § 16-25-10(3) (Supp. 2017) (emphasis added); *id.* § 20-4-20(b) (2014) (defining "household member" identical to section 16-25-10(3), but designating provisions with lowercase Roman numerals rather than letters).

[2] U.S. Const. amend XIV, § 1 ("All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."); *see* S.C. Const. art. I, § 3 ("The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws.").

On August 12, 2015, Doe sought an Order of Protection[3] from the Richland County Family Court. The family court judge summarily denied Doe's request, citing a lack of jurisdiction pursuant to section 20-4-20(b), which defines "household member" in the Protection from Domestic Abuse Act.[4]

Doe filed an action for declaratory judgment in this Court's original jurisdiction on August 14, 2015. Doe sought for this Court to declare unconstitutional the statutory definition of "household member" because it "leaves unmarried, same-sex victims of abuse without the benefit of the same remedy afforded to their heterosexual counterparts." This Court granted Doe's petition for original jurisdiction by order dated November 5, 2015.[5]

---

[3] An "Order of Protection" is defined as "an order of protection issued to protect the petitioner or minor household members from the abuse of another household member where the respondent has received notice of the proceedings and has had an opportunity to be heard." S.C. Code Ann. § 20-4-20(f) (2014).

[4] Subsequently, Doe sought a Restraining Order in a Richland County magistrate's court. On August 13, 2015, a magistrate court judge granted Doe a Temporary Restraining Order that was converted to a Restraining Order on December 17, 2015.

[5] The author of the dissenting opinion concludes there is no controversy for which the Court should exercise its original jurisdiction. For several reasons, we disagree with this conclusion. Initially, in granting Doe's petition for original jurisdiction, we found the case satisfied the requirements of our appellate court rules. *See* Rule 245(a), SCACR (authorizing Supreme Court to entertain matters in its original jurisdiction "[i]f the public interest is involved, or if special grounds of emergency or other good reasons exist"). Further, this Court has exercised its authority to grant a petition for original jurisdiction where a legitimate constitutional issue has been raised. *See, e.g.*, *Am. Petroleum Inst. v. S.C. Dep't of Revenue*, 382 S.C. 572, 677 S.E.2d 16 (2009) (accepting matter in original jurisdiction to address Petitioners' claim that Act at issue violated the "one subject" provision of the South Carolina Constitution), *holding modified by S.C. Pub. Interest v. Lucas*, 416 S.C. 269, 786 S.E.2d 124 (2016); *Tucker v. S.C. Dep't of Highways & Pub. Transp.*, 314 S.C. 131, 442 S.E.2d 171 (1994) (exercising original jurisdiction to determine whether the statute at issue violated the South Carolina Constitution); *Thompson v. S.C. Comm'n on Alcohol & Drug Abuse*, 267 S.C. 463, 467, 229 S.E.2d 718, 719 (1976) (exercising original jurisdiction and holding that provisions of the Uniform Alcohol and Intoxication Treatment Act violated the Equal Protection clauses of the federal and state constitutions; noting that the "questions involved are of such wide concern,

## II.     Discussion

## A.     Arguments

In essence, Doe maintains the South Carolina General Assembly intentionally excluded her from consideration for an Order of Protection in family court "because of her sexual orientation."  As a result, Doe claims she was denied a remedy that is readily accessible to similarly situated opposite-sex couples.  Doe explains that by purposefully defining "household member" as "a male **and** female who are cohabiting or formerly have cohabited" rather than in the disjunctive "male **or** female," the General Assembly enacted a statutory definition that violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

Specifically, Doe asserts she has been arbitrarily and capriciously deprived of the right to protect her life as she cannot obtain an Order of Protection in family court.  Further, Doe contends she is being denied the same protection afforded to opposite-sex, cohabiting couples even though there is no rational reason to justify this disparate treatment.

Although Doe acknowledges that an abuser in a same-sex relationship could be charged with criminal assault and battery and that she could obtain a Restraining Order in magistrate's court, she claims that these remedies are not commensurate with the heightened penalties and protections afforded by the Acts.  In particular, Doe points to the provisions of the Domestic Violence Reform Act that authorize enhanced penalties for convicted abusers who commit additional acts of violence,

---

both to law enforcement personnel and to the public, that the court should determine the issues in this declaratory judgment action").

Finally, any claim that "there is no controversy" before the Court is without merit.  While the parties may agree that Doe should be protected under the Acts, the parties disagree as to whether the definition of "household member" is constitutional and the appropriate remedy.  Additionally, even if the dissent's position were meritorious, it would not eliminate the existence of a controversy.  *See* 1A C.J.S. *Actions* § 16, at 259 (2016) (defining "controversy" and stating, "In a limited sense, it may be defined as an allegation of fact on one side which is denied by the other side, but the element of dispute is not essential to constitute a justiciable controversy, as such a controversy may exist even if all of the facts and the law are admitted by all the parties" (footnotes omitted)).

restrictions on a convicted abuser's ability to carry a firearm, additional penalties for violations of protection orders, and more stringent expungement requirements.

To remedy the disparate treatment and avoid the invalidation of the Acts in their entirety, Doe advocates for this Court to: (1) construe the word "and" in sections 16-25-10(3)(d) and 20-4-20(b)(iv) to mean "or"; and (2) declare the definition of "household member" to include any person, male *or* female, who is currently cohabiting with someone or who has formerly cohabited with someone.

In response, the State contends that any constitutional analysis could be avoided if the Court: (1) construes the phrase "male and female" as proposed by Doe; or (2) sever those words from the definition so that it reads only "cohabiting or formerly have cohabited." The State asserts that such a construction would be consistent with and effectuate the legislative purpose of the Acts, which is to protect against violence between members of the same household.

Alternatively, if the Court strikes down the Acts based on a constitutional violation, the State submits the Court could delay implementing its decision to allow the General Assembly time to amend the statutes consistent with this Court's ruling. Ultimately, given the importance of the domestic violence statutes, the State implores this Court not to invalidate the Acts in their entirety based solely on the literal import of the word "and."

## B. Constitutional Analysis

### 1. Legislative History[6]

---

[6] The author of the dissenting opinion takes issue with our reference to "legislative history." Interestingly, the dissent contends it is "improper," yet relies on the 1994 and 2005 versions of the Acts to declare that "[i]t is in fact perfectly reasonable to construe the Acts to protect unmarried, same-sex couples." Further, the dissent claims it "is not truly legislative history" because it does not "focus on some event, document, or statement separate from the amendment itself through which the Court could explain how the legislative history reflects the legislative intent." While the term "legislative history" encompasses the use of the items identified by the dissent, and is generally relied on if the text of the statute is ambiguous, it is not so limited in application and may include, as we did, the historical evolution of the statute at issue. *See* 73 Am. Jur. 2d *Statutes* § 97, at 336 (2012) ("In determining legislative intent, the court may review the earlier versions of the law. Therefore, in the

An overview of the legislative history of the Acts, particularly the term "household member," is instructive. In 1984, the General Assembly enacted the Criminal Domestic Violence Act and the Protection from Domestic Abuse Act. Act No. 484, 1984 S.C. Acts 2029. Notably, both Acts are contained within Act No. 484; however, the definition of "household member" is different in each Act.[7] Over the course of the next thirty-one years, the General Assembly amended the Acts four times, the most extensive in 2015.

In 1994, the General Assembly amended sections 16-25-10 and 20-4-20 to delete "family or" preceding "household member," add "persons who have a child in common," and add/substitute "*a male and female who are cohabiting or formerly have cohabited*" for "*and persons cohabitating or formerly cohabitating*." Act No. 519, 1994 S.C. Acts 5926, 5926-27; 5929.[8]

---

construction of a statute, reference may be made to earlier statutes on the subject which are regarded as in pari materia with the later statute.").

[7] In 1984, section 16-25-10 stated: "As used in this article, 'family or household member' means spouses, former spouses, parents and children, persons related by consanguinity or affinity within the second degree, and *persons cohabitating or formerly cohabitating*." (Emphasis added.)

In 1984, section 20-4-20(b) stated: "'Family or household member' means spouses, former spouses, parents and children, and persons related by consanguinity or affinity within the second degree."

[8] In 1994, section 16-25-10 was amended to read: "As used in this article, 'household member' means spouses, former spouses, parents and children, persons related by consanguinity or affinity within the second degree, persons who have a child in common, *and a male and female who are cohabiting or formerly have cohabited*." (Emphasis added.)

In 1994, section 20-4-20(b) read: "'Household member' means spouses, former spouses, parents and children, persons related by consanguinity or affinity within the second degree, persons who have a child in common, *and a male and female who are cohabiting or formerly have cohabited*." (Emphasis added.)

In 2003, the General Assembly deleted "parents and children, persons related by consanguinity or affinity within the second degree" from sections 16-25-10 and 20-4-20.  Act No. 92, 2003 S.C. Acts 1538, 1541; 1550.[9]

In 2005, the General Assembly retained the 2003 definition of "household member" in sections 16-25-10 and 20-4-20(b), but separately identified each qualifying household member with numbers in section 16-25-10 and lowercase Roman numerals in section 20-4-20(b).  Act No. 166, 2005 S.C. Acts 1834, 1836; 1842.

In 2015, the General Assembly extensively amended the Criminal Domestic Violence Act to provide for the "Domestic Violence Reform Act."  Act No. 58, 2015 S.C. Acts 225 (effective June 4, 2015).  While the new Act retained the definition of "household member," it provided for, *inter alia*, enhanced penalties for one convicted of subsequent offenses of domestic violence, the offense of domestic violence of a high and aggravated nature, and the prohibition of possession of a firearm for one convicted of domestic violence.[10]

Although a review of the statutory evolution is not dispositive of the instant case, it is conclusive evidence the General Assembly purposefully included the phrase "male and female" within the definition of "household member" in 1994 and has retained that definition.

---

[9]  In 2003, section 16-25-10 was amended to read:  "As used in this article, 'household member' means spouses, former spouses, persons who have a child in common, *and a male and female who are cohabiting or formerly have cohabited*."  (Emphasis added.)

In 2003, section 20-4-20(b) was amended to read:  "'Household member' means spouses, former spouses, persons who have a child in common, *and a male and female who are cohabiting or formerly have cohabited*."  (Emphasis added.)

[10]  *See*, *e.g.*, S.C. Code Ann. § 16-25-20 (Supp. 2017) (providing:  (1) enhanced penalties for one convicted of subsequent domestic violence offenses; (2) degrees of domestic violence offenses; and (3) penalties for a violation of an order of protection); *id.* § 16-25-30 (prohibiting possession of a firearm by a person who has been convicted of domestic violence or domestic violence of a high and aggravated nature); *id.* § 16-25-65 (outlining offense of domestic violence of a high and aggravated nature).

## 2. Presumption of Constitutionality

With this background in mind, we must presume the Acts are constitutional "unless [their] repugnance to the constitution is clear and beyond a reasonable doubt." *Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999). This general presumption of validity can be overcome only by a clear showing the act violates some provision of the constitution. *Id.* Accordingly, our scope of review is limited in cases involving a constitutional challenge to a statute "because all statutes are presumed constitutional and, if possible, will be construed to render them valid." *Hendrix v. Taylor*, 353 S.C. 542, 550, 579 S.E.2d 320, 324 (2003) (internal quotation marks and citation omitted).

## 3. Facial versus "As-Applied" Challenge

Cognizant of the presumption of constitutionality, we must first determine the type of constitutional challenge posed by Doe. In her brief and the allegations in the declaratory judgment pleadings, it appears that Doe claims the statutes are facially invalid *and* invalid "as applied" to her. However, as will be discussed, we find that Doe can only utilize an "as-applied" challenge.

"The line between facial and as-applied relief is [a] fluid one, and many constitutional challenges may occupy an intermediate position on the spectrum between purely as-applied relief and complete facial invalidation." 16 C.J.S. *Constitutional Law* § 153, at 147 (2015). Further, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). Rather, "[t]he distinction is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Id*.

"A facial challenge is an attack on a statute itself as opposed to a particular application." *State v. Legg*, 416 S.C. 9, 13, 785 S.E.2d 369, 371 (2016) (citing *City of Los Angeles, Calif. v. Patel*, ___U.S. ___, 135 S. Ct. 2443, 192 L. Ed. 2d 435 (2015)). Consequently, in analyzing a facial challenge to the constitutional validity of a statute, a court "considers only the text of the measure itself and not its application to the particular circumstances of an individual." 16 C.J.S. *Constitutional Law* § 163, at 161 (2015).

One asserting a facial challenge claims that the law is "invalid *in toto* – and therefore incapable of any valid application." *Steffel v. Thompson*, 415 U.S. 452, 474 (1974). This type of challenge is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Thus, "[u]nless the statute is unconstitutional in all its applications, an as-applied challenge must be used to attack its constitutionality." *Travelscape, L.L.C. v. S.C. Dep't of Revenue*, 391 S.C. 89, 109 n.11, 705 S.E.2d 28, 39 n.11 (2011) (quoting *Williams v. Pryor*, 240 F.3d 944, 953 (11th Cir. 2001)); *Renne v. Geary*, 501 U.S. 312, 323-24 (1991) (recognizing that a facial challenge should generally not be entertained when an "as-applied" challenge could resolve the case).

In an "as-applied" challenge, the party challenging the constitutionality of the statute claims that the "application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional." *Ada v. Guam Soc'y of Obstetricians & Gynecologists*, 506 U.S. 1011, 1011 (1992) (Scalia, J., Rehnquist, C.J., and White, J., dissenting), *denying cert. to* 962 F.2d 1366 (9th Cir. 1992). However, "finding a statute or regulation unconstitutional as applied to a specific party does not affect the facial validity of that provision." *Travelscape*, 391 S.C. at 109, 705 S.E.2d at 39; *see Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 965 (1984) (discussing "as-applied" challenges and stating, "despite some possibly impermissible application, the remainder of the statute covers a whole range of easily identifiable and constitutionally proscribable conduct" (internal quotation marks and citation omitted)). Instead, "[t]he practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative." *Ada*, 506 U.S. at 1011.

Here, Doe contends that by failing to include unmarried same-sex couples within the definition of "household member," the statutes are not only facially invalid, but invalid "as applied" because they excluded her from consideration for an Order of Protection in family court based on her sexual orientation. We conclude that Doe has failed to establish that the statutes are facially unconstitutional.

In prefacing our analysis, we note that Doe has not launched a wholesale attack on the Acts or the definition of "household member" nor does she advocate for invalidation of the statutory provisions in their entirety. Rather, she merely seeks to be included with those eligible to receive an Order of Protection. While this fact is not dispositive of a facial challenge, as we must necessarily focus on the text of

the statutes, it is significant given our judicial preference to remedy any constitutional infirmity in the least restrictive way possible.

Turning to the text of the definition of "household member," we find that it is facially valid because it does not overtly discriminate based on sexual orientation. Though not an all-inclusive list, the statutes would be valid as to same-sex married couples, opposite-sex married couples, and unmarried opposite-sex couples who live together or have lived together. Because there are numerous valid applications of the definition of "household member," it is not "invalid *in toto*." Consequently, Doe must use an "as-applied" challenge to present her claim that she was intentionally excluded as a qualifying "household member" for an Order of Protection in family court. Thus, the question becomes whether the statutory definition of "household member" as applied denied Doe equal protection of the laws.

### 4. Equal Protection

The Equal Protection Clauses of our federal and state constitutions declare that no person shall be denied the equal protection of the laws. U.S. Const. amend. XIV, § 1; S.C. Const. art. I, § 3. Equal protection "requires that all persons be treated alike under like circumstances and conditions, both in privileges conferred and liabilities imposed." *GTE Sprint Commc'ns Corp. v. Pub. Serv. Comm'n of S.C.*, 288 S.C. 174, 181, 341 S.E.2d 126, 129 (1986) (quoting *Marley v. Kirby*, 271 S.C. 122, 123-24, 245 S.E.2d 604, 605 (1978)). "The *sine qua non* of an equal protection claim is a showing that similarly situated persons received disparate treatment." *Grant v. S.C. Coastal Council*, 319 S.C. 348, 354, 461 S.E.2d 388, 391 (1995).

"Courts generally analyze equal protection challenges under one of three standards: (1) rational basis; (2) intermediate scrutiny; or, (3) strict scrutiny." *Denene, Inc. v. City of Charleston*, 359 S.C. 85, 91, 596 S.E.2d 917, 920 (2004). "If the classification does not implicate a suspect class or abridge a fundamental right, the rational basis test is used." *Id.* "Under the rational basis test, the requirements of equal protection are satisfied when: (1) the classification bears a reasonable relation to the legislative purpose sought to be affected; (2) the members of the class are treated alike under similar circumstances and conditions; and; (3) the classification rests on some reasonable basis." *Id.* "Those attacking the validity of legislation under the rational basis test of the Equal Protection Clause have the burden to negate every conceivable basis which might support it." *Boiter v. S.C. Dep't of Transp.*, 393 S.C. 123, 128, 712 S.E.2d 401, 403-04 (2011) (citations omitted).

Turning to the facts of the instant case, Doe has met her burden of showing that similarly situated persons received disparate treatment. Doe suggests that this case should be subject to the intermediate level of scrutiny as a result of "gender classification"; however, she seems to concede that the appropriate standard is the rational basis test. While there is some limited authority to support the application of intermediate scrutiny, we need not make that determination because the definition of "household member" as applied to Doe cannot even satisfy the rational basis test.

Defining "household member" to include "a male **and** female who are cohabiting or formerly have cohabited," yet exclude (1) a male and male and (2) a female and female who are cohabiting or formerly have cohabited," fails this low level of scrutiny. Specifically, we conclude the definition: (1) bears no relation to the legislative purpose of the Acts; (2) treats same-sex couples who live together or have lived together differently than all other couples; and (3) lacks a rational reason to justify this disparate treatment.

Based on our interpretation of the Acts, the overall legislative purpose is to protect victims from domestic violence that occurs within the home and between members of the home. *See Moore v. Moore*, 376 S.C. 467, 476, 657 S.E.2d 743, 748 (2008) ("The Protection from Domestic Abuse Act was enacted to deal with the problem of abuse between family members. The effect of the Act was to bring the parties before a judge as quickly as possible to prevent further violence." (quoting 17 S.C. Jur. *Criminal Domestic Violence*, § 14 (Supp. 2007)).

Statistics, as identified by the State, reveal that "women are far more at risk from domestic violence at the hands of men than vice versa." Thus, the State maintains the General Assembly defined "household member" as "a male *and* female who are cohabiting or formerly have cohabited" to address the primary problem of domestic violence within opposite-sex couples.

Without question, the statistics relied on by the State are accurate. However, a *victim* of domestic violence is not defined by gender, as the word is non-gender specific.[11]

Moreover, although the Acts may have been originally enacted to address traditional findings of domestic violence, new research shows that individuals within

---

[11] *Cf.* S.C. Const. art. I, § 24 (outlining Victims' Bill of Rights and providing that it is intended to "preserve and protect victims' rights to justice and due process regardless of race, sex, age, religion, or economic status").

same-sex couples experience a similar degree of domestic violence as those in opposite-sex couples. *See* Christina Samons, *Same-Sex Domestic Violence: The Need for Affirmative Legal Protections at All Levels of Government*, 22 S. Cal. Rev. L. & Soc. Just. 417, 430-35 (2013) (recognizing recent reform to criminal and family laws for domestic violence involving same-sex couples at the federal level and identifying need for similar reform at state level); Leonard D. Pertnoy, *Same Violence, Same Sex, Different Standard: An Examination of Same-Sex Domestic Violence and the Use of Expert Testimony on Battered Woman's Syndrome in Same-Sex Domestic Violence Cases*, 24 St. Thomas L. Rev. 544 (2012) (discussing similarities of domestic violence in same-sex versus opposite-sex couples; recognizing disparity in remedies afforded by the courts to victims of domestic violence in same-sex versus opposite-sex couples).

Because the Acts are intended to provide protection for all victims of domestic violence, the definition of "household member," which eliminates Doe's relationship as a "qualifying relationship" for an Order of Protection, bears no relation to furthering the legislative purpose of Acts.

Additionally, the definition of "household member" treats unmarried, same-sex couples who live together or have lived together differently than all other couples. As we interpret the definition of "household member" a person, who fits within one of the following relationships, would be eligible for an Order of Protection: (1) a same-sex married or formerly married couple;[12] (2) a same-sex couple, either married or unmarried, who have a child in common;[13] (3) an opposite-sex married or formerly married couple; (4) an opposite-sex couple, either married or unmarried, who have a child in common; and (5) an unmarried opposite-sex couple who is living together or who has lived together.

---

[12] Judicial declarations have eliminated, for the most part, disparate treatment between same-sex and opposite-sex couples. *See Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) (holding that states' ban on same-sex marriages violated the Equal Protection and Due Process Clauses).

[13] Sections 16-25-10(3)(c) and 20-4-20(b)(iii) identify a "household member" as including "*persons* who have a child in common." Thus, arguably an unmarried, same-sex couple who has a child in common would constitute a "qualifying relationship" for an Order of Protection. *See, e.g., V.L. v. E.L.*, 136 S. Ct. 1017 (2016) (holding the Alabama Supreme Court erred in refusing to grant full faith and credit to a Georgia decree of adoption, which was between an unmarried, same-sex couple who had three children in common but did not reside together).

Thus, while Doe and her ex-fiancé were similarly situated to other unmarried or formerly married couples, particularly unmarried opposite-sex couples who live together, Doe was precluded from seeking an Order of Protection based on the definition of "household member."  We find there is no reasonable basis, and the State has offered none, to support a definition that results in disparate treatment of same-sex couples who are cohabiting or formerly have cohabited.[14]

Because it is clear that the definition of "household member" violates the Equal Protection clauses of our state and federal constitutions, we must declare it unconstitutional.  *See Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999) ("A legislative enactment will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates a provision of the constitution.").[15]

### 5.  Remedy

Having concluded that the definition of "household member" is unconstitutional as applied to Doe, we must next determine the appropriate remedy.

Clearly, in the context of the statutory scheme of the Acts, this Court cannot construe and effectively amend the statutes to change the plain language of "and" to "or" as proposed by the State.  *See Shelley Constr. Co. v. Sea Garden Homes, Inc.*, 287 S.C. 24, 28, 336 S.E.2d 488, 491 (Ct. App. 1985) ("We are not at liberty, under the guise of construction, to alter the plain language of the statute by adding words

---

[14]  We need not reach Doe's Due Process challenge as the Equal Protection issue is dispositive.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 518 S.E.2d 591 (1999) (recognizing that an appellate court need not address remaining issues on appeal when the disposition of an independent issue is dispositive); *Sangamo Weston, Inc. v. Nat'l Surety Corp.*, 307 S.C. 143, 414 S.E.2d 127 (1992) (concluding that appellate courts will not issue advisory opinions that are purely academic and do not affect the outcome of the case).

[15]  In contrast, the dissent finds "*the only*" reasonable interpretation is that "Doe is covered" because "an order of protection is available when domestic violence is committed upon members of unmarried, same-sex couples of *both* genders–male and female."  Notably, the author of the dissenting opinion is the sole proponent of this interpretation, which not only lacks supporting authority but is based on a forced construction of the statutory language.

which the Legislature saw fit not to include."); *cf. State v. Leopard*, 349 S.C. 467, 473, 563 S.E.2d 342, 345 (Ct. App. 2002) (declining to alter statutory definition of "household member" in section 16-25-10; stating, "[i]f it is desirable public policy to limit the class to those physically residing in the household, that public policy must emanate from the legislature").

Also, even though the Acts include severability clauses,[16] there is no reason to employ them as we have found the sections containing the definition of "household member" are not facially invalid. Rather, the constitutional infirmity is based on their application to Doe, i.e., not including unmarried same-sex couples in the definition of "household member." Thus, severance cannot rectify the under-inclusive nature of the definition.

Further, even if we were to attempt to remedy the constitutional infirmity through severance, we find severance of the entire phrase "a male **and** female who are cohabiting or formerly have cohabited" to be unavailing since the constitutional infirmity would remain. Protection afforded by the Acts would still be elusive to Doe and would no longer be available to opposite-sex couples who are cohabiting or formerly have cohabited. Yet, it would be available to unmarried persons such as former spouses (same-sex or not) and persons (same-sex or not) with a child in common. Absent an "as-applied" analysis, the "household member" definitional sections must be struck down. As a result, the Acts would be rendered useless. Such a drastic measure is neither necessary nor desired. *See Thayer v. S.C. Tax Comm'n*, 307 S.C. 6, 13, 413 S.E2d 810, 814-15 (1992) ("The test for severability is whether the constitutional portion of the statute remains complete in itself, wholly independent of that which is rejected, and is of such a character as that it may fairly be presumed that the Legislature would have passed it independent of that which is in conflict with the Constitution." (internal quotation marks and citation omitted)). Accordingly, we reject any suggestion to sever the Acts as it is inconsistent with our rules of statutory construction and would contravene the intent of the General Assembly.

Finally, we decline to invalidate the Acts in their entirety. Such a decision would result in grave consequences for victims of domestic violence. To leave these

---

[16] Act No. 58, 2015 Acts 225, 265-66 (providing a severability clause in 2015 Domestic Violence Reform Act); Act No. 166, 2005 Acts 1834, 1846 (providing a severability clause in 2005 Act amending Protection from Domestic Abuse Act, which includes definition of "household member" in section 20-4-20).

victims unprotected for any length of time would be a great disservice to the citizens of South Carolina.

### III.    Conclusion

In order to address the important issue presented in this case and remain within the confines of the Court's jurisdiction, we declare sections 16-25-10(3) and 20-4-20(b) unconstitutional as applied to Doe.  Therefore, the family court may not utilize these statutory provisions to prevent Doe or those in similar same-sex relationships from seeking an Order of Protection.  *Cf. Gartner v. Iowa Dep't of Pub. Health*, 830 N.W.2d 335, 354 (Iowa 2013) (concluding that presumption of parentage statute, which expressly referred to a mother, father, and husband, violated equal protection as applied to a married lesbian couple to whom a child was born to one of the spouses during the couple's marriage; identifying appropriate remedy by stating, "Accordingly, instead of striking section 144.13(2) from the [Iowa] Code, we will preserve it as to married opposite-sex couples and require the [Iowa Department of Public Health] to apply the statute to married lesbian couples").

**Declared Unconstitutional As Applied**.

**KITTREDGE and HEARN, JJ., concur. Acting Justice Costa M. Pleicones, concurring in result only.  FEW, J., concurring in part and dissenting in part in a separate opinion.**

**JUSTICE FEW:** Jane Doe, the State, and all members of this Court agree to this central point: *if* the Acts exclude unmarried, same-sex couples from the protections they provide all other citizens, they are obviously unconstitutional. *See* U.S. CONST. amend. XIV, § 1 ("No state shall . . . deny to any person . . . the equal protection of the laws."); S.C. CONST. art. I, § 3 ("nor shall any person be denied the equal protection of the laws"); *Sunset Cay, LLC v. City of Folly Beach*, 357 S.C. 414, 428, 593 S.E.2d 462, 469 (2004) ("To satisfy the equal protection clause, a classification must . . . rest on some rational basis.").

For two reasons, I would not declare the Acts unconstitutional. First, Doe and the State agree the Protection from Domestic Abuse Act protects Doe, and thus, there is no controversy before this Court. Second, Doe and the State are correct: ambiguity in both Acts—particularly in the definition of household member—requires this Court to construe the Acts to provide Doe the same protections they provide all citizens, and thus, the Acts are not unconstitutional.

## I. There is no Controversy before the Court

Our courts will not address the merits of any case unless it presents a justiciable controversy. *Byrd v. Irmo High Sch.*, 321 S.C. 426, 430-31, 468 S.E.2d 861, 864 (1996). In *Byrd*, we stated, "Before any action can be maintained, there must exist a justiciable controversy," and, "This Court will not [decide] . . . academic questions or make an adjudication where there remains no actual controversy." *Id.*; *see also Peoples Fed. Sav. & Loan Ass'n v. Res. Planning Corp.*, 358 S.C. 460, 477, 596 S.E.2d 51, 60 (2004) ("A threshold inquiry for any court is a determination of justiciability, i.e., whether the litigation presents an active case or controversy."). Doe and the State agree the Protection from Domestic Abuse Act protects Doe, and therefore, there is no controversy.

Jane Doe filed an action in the family court seeking an order of protection from a threat of domestic violence pursuant to section 20-4-40 of the Protection from Domestic Abuse Act. S.C. Code Ann. § 20-4-40(a) (2014). By its terms, the Act applies to "any household members in need of protection." *Id.* By filing the action seeking the protection of the Act, Doe necessarily took the position that the definition of "household member" includes unmarried, same-sex couples, and thus includes her. Doe argues to this Court that the definition should be interpreted to

include her.[17]  Her alternative argument—that the Act is unconstitutional—is based on the family court ruling she chose not to appeal.  Rather than appeal, she filed this action naming the State as the only defendant.

The State, however, agrees with the position Doe took in family court—the definition of household member includes unmarried, same-sex couples, and thus includes Doe.  In its Answer, the State contends that any "constitutional problem associated with the definitions at issue . . . may be addressed through interpretation to encompass unmarried, same-sex couples."  In its return to Doe's petition for original jurisdiction, the State wrote, "There is . . . no evidence that the Legislature intentionally discriminated against same-sex couples."  At oral argument before this Court, the State disagreed with the statement "it is clear it is the legislative intent to exclude homosexual couples."[18]  Also at oral argument, the State was asked— referring to the Protection from Domestic Abuse Act—"You're saying the statute covers Jane Doe?" to which the State responded, "Yes."  In making these statements, the State asks this Court to interpret the definition of "household member" to include Doe and partners in other non-marital same-sex domestic relationships.

If Doe had appealed the family court's ruling that the Protection from Domestic Abuse Act did not apply to her, she would have presented a justiciable controversy to this Court.  Doe chose not to appeal, and she filed this action.  When the State agreed with Doe that the Act should be interpreted to protect her, it eliminated any controversy.  The majority overlooks this important detail.  When both sides agree, there is no controversy.

## II.  The Acts are *not* Unconstitutional

In *Joytime Distributors & Amusement Co. v. State*, 338 S.C. 634, 528 S.E.2d 647 (1999), this Court repeated the longstanding rule of law that we will not construe

---

[17] As the majority explains, "Doe advocates for this Court to: (1) construe the word 'and' . . . to mean 'or'; and (2) declare the definition of 'household member' to include any person, male *or* female . . . ."

[18] A justice of the Court stated, "Following the legislative history of this statute, it is clear it is the legislative intent to exclude homosexual couples.  Otherwise, they would not have changed the word 'person' to 'male and female.'"  The State responded, "I respectfully disagree."

an act of the General Assembly to be unconstitutional unless there was no choice but to do so.

> This Court has a very limited scope of review in cases involving a constitutional challenge to a statute. All statutes are presumed constitutional and will, if possible, be construed so as to render them valid. A legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear and beyond a reasonable doubt. A legislative enactment will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates a provision of the constitution.

338 S.C. at 640, 528 S.E.2d at 650; *see In re Stephen W.*, 409 S.C. 73, 76, 761 S.E.2d 231, 232 (2014) (same); *S.C. Pub. Interest Found. v. S.C. Transp. Infrastructure Bank*, 403 S.C. 640, 645, 744 S.E.2d 521, 523 (2013) (same); *Clarke v. S.C. Pub. Serv. Auth.*, 177 S.C. 427, 435, 181 S.E. 481, 484 (1935) (same); *see also Abbeville Cty. Sch. Dist. v. State*, 410 S.C. 619, 628, 767 S.E.2d 157, 161 (2014) (reciting the principle that "we will not find a statute unconstitutional unless 'its repugnance to the Constitution is clear beyond a reasonable doubt'").

Under *Joytime Distributors*, we are constrained to interpret the Acts to include unmarried, same-sex couples unless the Acts "so clearly" exclude them "as to leave no room for reasonable doubt." In other words, if the statutory text of the definition of "household member" in the Acts is clear, and if that text so clearly excludes unmarried, same-sex couples as to leave no reasonable doubt they are excluded, then the Court is correct to find the Acts unconstitutional. That text, however, is not clear.

We originally decided this case on July 26, 2017. *Doe v. State*, Op. No. 27728 (S.C. Sup. Ct. filed July 26, 2017) (Shearouse Adv. Sh. No. 28 at 55). In this substituted opinion the Court has reversed itself in two important respects.[19] The first—now finding the Acts unconstitutional "as applied," but previously finding the applicable subsections of the Acts unconstitutional on their face—is a significant

---

[19] Chief Justice Beatty, who was not the author of the original majority opinion, has not been inconsistent, but from the outset has advanced the argument that is now the position of the Court. *See Doe*, Op. No. 27728 (Shearouse Adv. Sh. No. 28 at 62) (Beatty, C.J., concurring in part and dissenting in part).

reversal, but not important to my analysis. The second—reversing itself from a finding that the Acts are clear and unambiguous[20] to an analysis based on the premise that the applicable subsections of the Acts are not clear[21]—demonstrates my analysis is correct. This fundamental change in the Court's reasoning should require an explanation as to how the majority can ignore the presumption of constitutional validity we said was the law in *Joytime Distributors*. The majority recites the words, "This general presumption of validity can be overcome only by a clear showing the act violates some provision of the constitution." But the requisite "clear showing" simply cannot be made based on an argument that the Acts *ambiguously* set forth the definition that violates the constitution.

The Court's new analysis pays no attention to the text of the Acts. Rather, the majority's analysis is driven by the *actions* the General Assembly took in 1994, and is based solely on what the majority calls "legislative history." This approach is improper because we have repeatedly declared we will not look beyond the text of the statute itself, and thus will not consider other indicators of legislative intent such as "history," unless the text of the statute is ambiguous.[22] *See, e.g.*, *Smith v. Tiffany*, 419 S.C. 548, 555, 799 S.E.2d 479, 483 (2017) ("If a statute is clear and explicit in its language, then there is no need to resort to statutory interpretation or legislative intent to determine its meaning." (quoting *Timmons v. S.C. Tricentennial Comm'n*, 254 S.C. 378, 401, 175 S.E.2d 805, 817 (1970))); 419 S.C. at 556, 799 S.E.2d at 483 ("Absent an ambiguity, there is nothing for a court to construe, that is, a court should not look beyond the statutory text to discern its meaning.").

---

[20] In the original decision, the majority stated, "We disagree with Justice Few that the language at issue is ambiguous," and, "The plain language is clear . . . ." *Doe*, Op. No. 27728 (Shearouse Adv. Sh. No. 28 at 59 n.6).

[21] As I will explain, the majority's finding of unconstitutional legislative intent is based on what it contends is an analysis of legislative history, which is an analysis our law does not permit when the text of the statute is clear and unambiguous.

[22] The majority's approach is improper for a second reason—this is not truly legislative history. The majority has merely looked at the amendments to the definition of "household member," and drawn inferences from those amendments to conclude what the General Assembly intended. That is called "guesswork," not the consideration of history. A proper legislative history analysis would focus on some event, document, or statement separate from the amendment itself through which the Court could explain how the legislative history reflects the legislative intent.

By turning directly to legislative history to support its analysis without any reference to the text of the definitions, the majority has necessarily conceded the text is not clear, but ambiguous. This concession should have brought the majority's analysis back to the presumption of constitutionality, and the Court's duty to try to find a way to construe the Acts as constitutional. *Abbeville Cty. Sch. Dist.*, 410 S.C. at 628, 767 S.E.2d at 161; *Stephen W.*, 409 S.C. at 76, 761 S.E.2d at 232; *S.C. Pub. Interest Found.*, 403 S.C. at 645, 744 S.E.2d at 523; *Joytime Distributors*, 338 S.C. at 640, 528 S.E.2d at 650; *Clarke*, 177 S.C. at 435, 181 S.E. at 484. If it is reasonable to do so, we should construe the Acts to protect unmarried, same-sex couples, and find the Acts constitutional. *See Town of Mt. Pleasant v. Roberts*, 393 S.C. 332, 342, 713 S.E.2d 278, 283 (2011) ("Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law.").

It is in fact perfectly reasonable to construe the Acts to protect unmarried, same-sex couples. In 1994, "household member" was defined in terms of pairs or groups of people, "spouses, former spouses, parents and children, persons related . . . ." *See supra* note 8. In that context, the Acts logically applied when domestic violence occurred *between* the members of a defined pair or group. In 2005, however, the definitions were amended so that the primary subsections of each definition are now framed in terms of individual people: "a spouse; . . . a former spouse." *See* Act No. 166, 2005 S.C. Acts 1834, 1836.[23] Under this current structure, the Acts apply when domestic violence is committed *upon* the members of the defined group.

The Protection from Domestic Abuse Act follows this structure. The Act "created an action known as a 'Petition for an Order of Protection' in cases of abuse *to* a household member." § 20-4-40 (emphasis added). The "petition for relief must allege the existence of abuse *to* a household member." § 20-4-40(b) (emphasis added). Under the current version of the Protection from Domestic Abuse Act, therefore, the Act operates to protect citizens from abuse "to" a person listed in the

---

[23] The majority incorrectly states "the General Assembly retained the 2003 definition of 'household member'" with the 2005 amendments. Rather, the 2005 amendments contain a substantive change that is important to my analysis. Before 2005, the household member was defined in terms of groups—*between* whom domestic violence might be committed. After the 2005 amendments, household member is defined in terms of individuals—*upon* whom domestic violence might be committed. The majority overlooks this substantive change in labelling my analysis "forced."

definition of "household member."  Reading the Protection from Domestic Abuse Act under this structure, Doe and other partners in unmarried, same-sex relationships are protected.

To understand this point, consider the operation of the Acts regarding individuals included in the first and second subsections of the definition—"a spouse" and "a former spouse."  A person may seek an order of protection under the Protection from Domestic Abuse Act "in cases of abuse to a household member."  If we apply that provision using the first subsection of the definition, an order of protection is available "in cases of abuse to [a spouse]."  If we apply that provision using the second subsection of the definition, an order of protection is available "in cases of abuse to [a former spouse]."

Now consider the operation of the Acts regarding individuals included in the fourth subsection—"a male and female who are cohabiting or formerly have cohabited"—the subsection the majority finds unconstitutional.  An order of protection is available "in cases of abuse to [a male . . .]," or "in cases of abuse to [a female . . .]."  In fact, an order of protection is available "in cases of abuse to [a male *and* a female]."  In other words, an order of protection is available when domestic violence is committed upon members of unmarried, same-sex couples of *both* genders—male and female.  Doe is covered.

The interpretation I have just explained is not only a reasonable interpretation, it is *the only* reasonable interpretation.  The majority's interpretation that the General Assembly intended to exclude same-sex couples is based on the premise that the subsection applies only when "a male and female" are cohabiting together.  This interpretation works only if the Acts are construed to apply when domestic violence occurs between members of a defined pair or group. That construction was eliminated, however, with the 2005 amendments.  As discussed above, the Acts now apply when abuse is committed upon the members of the defined group.  Thus, the majority's interpretation leads to an absurd result.  The General Assembly clearly did not intend the Acts to apply "in cases of abuse to [a male and female]."  Under such a reading the Acts would apply only when there are two victims.

The presence of the word "and" instead of "or" in the fourth subsection of the definition of household member may be troubling, but it does not require the conclusion the General Assembly intentionally excluded unmarried, same-sex couples from the Acts.  Rather, it merely demonstrates the ambiguity in the definition.  It is more reasonable to resolve that ambiguity in favor of constitutionality by including Doe and other members of unmarried, same-sex

couples than it is to resolve it in favor of finding a malicious motive behind the 1994 amendments.

I respectfully believe Doe and other members of unmarried, same-sex couples are covered by the Acts and the Acts are therefore constitutional.