19881

David Allen WHITE, Appellant, v. The STATE of South Carolina, Respondent

(208 S. E. (2d) 35)

*Levy S. Alford, Esq.,* of York, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., Emmet H. Clair,* and *Stephen T. Savitz, Asst. Attys. Gen.,* of Columbia, *for Respondent,*

August 28, 1974.

BUSSEY, Justice:

On November 23, 1970 the appellant, White, was convicted of burglary in the General Sessions Court of York County and sentenced to a term of 20 years. The burglary with which he was charged occurred in the town of Fort Mill on the night of November 14, 1970. The defendant did not appeal from his conviction and sentence, but subsequently filed a petition for post-conviction relief and the instant appeal is from an order denying such relief following a full evidentiary hearing which was held on June 21, 1973.

Briefly the facts of the case are as follows. At approximately midnight of Saturday, November 14, 1970, the residence of Mr. & Mrs. George Ackerman, in the town of Fort Mill, was burglarized. Mrs. Ackerman awoke at about 12:15 a. m. and saw the burglar standing in the doorway of her bedroom. There was no light burning in the bedroom, but a light was burning in the hall behind the burglar so that she was able to see not his face, but his size and build and also had an opportunity to observe his manner of walking. When she realized that the person in the doorway was an intruder she screamed and the burglar fled.

The police were promptly notified and an investigation commenced. At 5:00 a. m. White was arrested at his home as a susspect, a warrant for his arrest having been obtained by the officers. In his possession at the time of his arrest was a billfold, belonging to Mrs. Ackerman and taken from her purse in the course of the burglary. At approximately 7:00 a. m. on Sunday morning, November 15, 1970, Mrs. Ackerman viewed the defendant in a one to one confrontation at the police station in Fort Mill, but was unable to positively identify him. He was asked to walk in the presence of Mrs. Ackerman, who could only say that he was "the right height, the same build and he walked the same." She stated, and

later testified, that she felt like he was the burglar but that she could not positively or definitely identify him.

Defendant's first three questions on appeal are predicated on the contention that the trial court erred in allowing testimony as to the pre-trial confrontation between Mrs. Ackerman and the defendant and that there was error in denying post-conviction relief on such ground. At the trial, before permitting Mrs. Ackerman to testify as to anything that would tend to identify the defendant as the burglar, the trial judge conducted an extensive hearing concerning the admissibility of evidence as to the pre-trial confrontation and/or the results thereof. Such hearing was conducted out of the presence of the jury. Mrs. Ackerman, both police officers who were present at the confrontation, and the defendant were examined and cross-examined at length as to circumstances of the confrontation and whether or not the defendant had knowingly and voluntarily relinquished his right to the presence of counsel and voluntarily submitted to the confrontation. As to the voluntariness of his submission of the confrontation, the record shows that he, himself, testified that he wanted to go out there and prove he was not the one who went into the "woman's house." While he denied that he was advised of his right to the presence of counsel at the confrontation, there was abundant evidence to the contrary. Both the trial judge and the judge who held the post-conviction hearing found, as a fact, that he was fully advised of all of his rights and that he had knowingly and voluntarily waived his rights and had voluntarily submitted to the confrontation.

White contended at the post-conviction hearing, but not at the trial, that the confrontation was unnecessarily suggestive and conducive to mistaken identification and thus in violation of his constitutional rights. He testified, *inter alia,* at the post-conviction hearing that Mrs. Ackerman's indefinite and uncertain identification of him was made only after suggestions by police officers that he was in fact the burglar. It is quite significant, we think, that

the defendant, when testifying out of the presence of the jury at his trial, made no mention or claim whatever as to any suggestive or factual statements made by police officers or other circumstances suggestive of an identification of defendant as the burglar by Mrs. Ackerman. He was given full opportunity at the trial to bring out anything which might have rendered evidence resulting from the confrontation inadmissible. His belated contention, made at the post-conviction hearing, that there were in fact improper suggestions and statements by the police officers, was obviously not accorded any credibility or weight by the hearing judge, although he did not pass specifically thereupon. We perceive no error in denying defendant relief on this asserted ground. Mrs. Ackerman was unable to positively identify defendant as the burglar and this in itself tends to refute any argument that she did identify him as a result of suggestions by the police officers. She testified only as to the similarities of certain physical characteristics of the burglar in her home and those of the defendant. *Cf. State v. Hicks,* 257 S. C. 279, 185 S. E. (2d) 746.

Finally, it is argued in connection with the pre-trial confrontation that he was not permitted to make a telephone call prior to such and that such was a denial of his constitutional rights; that only by making a telephone call could he contact an attorney, or reach his family, who could aid him in doing so. There is no merit in this contention for more than one reason; such was not relied upon as a ground in his petition for post-conviction relief. But, even if the issue were properly before us the trial record refutes his claim. There was abundant evidence that he was fully advised by the officers of all of his constitutional rights and also advised that he had a right to make a telephone call or calls. The trial court found, supported by abundant evidence, that the defendant had been fully advised of his rights and had waived such and voluntarily submitted to the confrontation, a factual finding which was later reaffirmed by the judge at the post-conviction hearing.

Defendant's next contention challenges the admissibility into evidence of Mrs. Ackerman's light blue billfold taken from her purse in the course of the burglary and found, according to the State's evidence, in one of the defendant's trouser pockets at the time of his arrest pursuant to a warrant. At the trial a hearing was held out of the presence of the jury as to the circumstances attendant upon the seizure of this billfold and His Honor found, and held, that it was obtained as a result of a search incident to a lawful arrest. Indeed there was no evidence offered from which a contrary inference could be drawn.

In the post-conviction proceeding defendant took a position not asserted at the trial. He contended and testified that the billfold was in fact planted upon him by the officers. He takes the alternative and inconsistent position that the billfold was the fruit of an unlawful search made in violation of his rights under the Fourth Amendment of the Constitution. The defendant at the time of his arrest was in the home of his great-aunt, referred to as his grandmother, one Hattie White age 77 years with whom defendant apparently was temporarily visiting, he being on parole and in Fort Mill in violation of his parole. When he first became a suspect in this case, during the early morning hours of November 15, 1970, police officers went to the home of Hattie White, but defendant was not then there. She promised to call the police if he came in, which she did. Police officers returned at 4:00 a. m. and interrogated, but did not at that time arrest the defendant. In the course of the interrogation, according to the officers, there was seen in his hand a light blue object which later developed to be the billfold stolen from Mrs. Ackerman.

Introduced at the post-conviction hearing, by consent, was an affidavit from Hattie White, who was physically unable to be present, it being stipulated that her testimony would be in accordance with the affidavit if present. In brief, her pertinent testimony is to the effect that she saw no billfold or other light blue object in the defendant's hand when

the officers were there at 4:00 a. m. and that one or more of the officers went into defendant's bedroom and handled his clothing giving rise to the inference that they at least had the opportunity to discover or to plant the billfold at that time. She did not testify that they did either. The testimony of the officers at the trial is in sharp conflict with that of Hattie White as to what occurred at 4:00 a. m., and of course, in sharp conflict with the defendant's present contention that the billfold was planted upon him. His contention as to the possible violation of his Fourth Amendment rights seems to be solely predicated on the possible inference from the testimony of Hattie White that the officers were in his bedroom, without permission, at 4:00 a. m. and then discovered the billfold in an unlawful search of his clothing.

The hearing judge recognized that there were conflicts in the testimony but found and concluded, just as the trial judge did that, in fact, the billfold was seized as an incident, or result, of a lawful arrest pursuant to an arrest warrant properly served upon the defendant; and accordingly that the billfold was properly introduced into evidence. Such finding of fact is abundantly supported by competent evidence and is, of course, under the well settled rule binding upon us.

Finally, the defendant contends that the hearing judge should have ordered a new trial on the ground that defendant did not knowingly and intelligently waive the right to appeal from his conviction and sentence. Admittedly the defendant's trial counsel did not consult with or advise the defendant as to his right to so appeal. His trial counsel, who is not his present counsel, testified at the post-conviction hearing that he had not advised the defendant of his right to appeal because of the defendant's prior record, he felt certain that he knew his rights thereabout and additionally he was convinced there was no meritorious ground of appeal.

The defendant, in November, 1964, pled guilty to the offense of peeping tom and received a sentence of 18 months.

On May 22, 1967 he pled guilty to the offense of burglary committed in the town of Fort Mill and was sentenced to a term of nine years. On June 17, 1970 he was granted a parole by the State Parole Board. At the time of the burglary in the instant case he was supposedly living and working in Columbia and actually in Fort Mill in violation of his parole. Although the defendant testified that he was unaware of his right to appeal, his record would suggest that his trial counsel had a reasonable basis for assuming that, in fact, he did know.

While the defendant may not have been fully aware of all of his rights as an indigent or the steps necessary to perfect an appeal, it is indeed incredible that he, a recent inmate of the Central Corrections Institution in Columbia for several years, was totally unaware of his right to appeal. Although there was a reasonable basis for trial counsel's conclusion or assumption that the Defendant was fully aware of his appeal rights, counsel should not have rested upon that assumption. He should have made certain that the defendant was fully aware of his rights and in the absence of an intelligent waiver by the defendant either pursued an appeal in his behalf or else, if deemed appropriate by counsel, complied with the procedure set forth in *Anders v. State of California,* 386 U. S. 738, 87 S. Ct. 1396, 18 L. Ed. (2d) 493.

The hearing judge who had before him and considered the trial record concurred in the conclusion of defendant's trial counsel that there was no meritorious ground of appeal, but citing the decisions of the United States Fourth Circuit Court of Appeals in *Nelson v. Peyton,* 415 F. (2d) 1154 and *Shiflett v. Commonwealth of Virginia,* 447 F. (2d) 50, concluded that the defendant did not knowingly and intelligently waive his right to appeal. As a result of such conclusion the court directed his present counsel to attempt to secure for the defendant a belated appeal to this Court from his conviction and sentence. Defendant contends that the court instead should have either

granted him "a new trial or the immediate right to a full appeal." We know of no authority for the hearing judge granting defendant a full right of appeal and he cites none. Neither are we cited, nor aware of, any authority for the hearing judge granting the defendant a new trial on this ground, at least in the absence of any showing of prejudice to the defendant. The hearing judge in effect concluded that there was none.

As to a belated appeal to this Court from the conviction and sentence, which counsel was directed to attempt, it is well settled that in the absence of a notice of appeal having been given and timely served this Court has no jurisdiction over such an appeal. *State v. Wright,* 228 S. C. 432, 90 S. E. (2d) 492, Code Section 7—405, 3 West's South Carolina Digest, Appeal and Error Key 425—430. While this Court is without jurisdiction to entertain such an appeal, here as in the *Wright* case this Court, in connection with the appeal which is properly before us, has fully reviewed the trial record and our review thereof has led to the conclusion that there was no reversible error in the trial and that there was not an arguably meritorious ground of appeal, even if notice of intention to appeal had been timely served so as to confer jurisdiction upon this Court. We deem all appellant's exceptions to be without merit and the judgment below is accordingly

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.