572 S.E.2d 274

**Johnny Lee LUCAS, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

No. 25542.

Supreme Court of South Carolina.

Submitted Sept. 19, 2002.
Decided Oct. 28, 2002.
Rehearing Denied Dec. 3, 2002.

Johnny Lee Lucas, pro se, of Bennettsville, for Petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General B. Allen Bullard, and Assistant Attorney General W. Bryan Dukes, of Columbia, for Respondent.

Justice WALLER:

We granted Petitioner a belated review of his direct appeal pursuant to *White v. State*, 263 S.C. 110, 208 S.E.2d 35 (1975). We affirm.

## FACTS

Petitioner, Johnny Lee Lucas (Lucas), was convicted of first degree burglary, grand larceny, pointing and presenting a firearm, and possession of a firearm by a convicted felon, in connection with the April 15, 1996, burglary of a North Charleston home.[1] He was sentenced to life without parole for burglary under the recidivist statute, and given five years on each of the remaining charges.

During Lucas' trial, his attorney, William Thrower, moved to be relieved as counsel on the basis that his client intended to call a witness, Rose Marie Brown, who planned to give perjured testimony. The trial judge decided to take Brown's testimony *in camera.* The gist of her testimony was that Lucas had left Brown's house with her husband, Robert Brown, at approximately 9:30a.m. on April 15, 1996, to go see the burglary victim, Mr. Lindenburg; Mrs. Brown believed Lindenburg owed her husband some money. During the *in camera* hearing, it was revealed that Brown's testimony had been written out for her. The statement was in handwritten form, and was not Mrs. Brown's handwriting. She had been given the statement by Lucas' attorney, Mr. Thrower.

---

1. The owners of the home, Mr. and Mrs. Lindenburg came home from a walk and found the burglary in progress. Mr. Lindenburg had a gun with him and shot and killed Lucas' cohort, Robert Anthony Lee Brown, and shot Lucas in the chest.

Thrower advised the court that he had met with Lucas on Sunday evening and that Lucas had given him the statement to help Brown refresh her memory. However, after talking with Brown in the hallway on the day of trial, it had come to Thrower's attention that her testimony was not going to be truthful. He based this assertion on the fact that when he questioned her as to whether the written statement was the sworn truth, she would only reply that it was what she was going to testify to, and when again asked if everything in the statement were truthful, she would not say so. The trial court denied counsel's motion to be relieved.

At the close of evidence, Lucas moved for a mistrial on the ground that, *inter alia*, the lawyer said he didn't want to handle this case, so I had ineffective assistance. The trial court denied the motion, ruling that counsel was still there as Lucas' lawyer, notwithstanding Lucas was not obliged to use him if he didn't want. Closing arguments were then made by both Thrower and Lucas. Lucas renewed his motion for a mistrial based upon counsel's backing out on him.

Lucas filed for PCR alleging ineffective assistance of counsel in failing to perfect an appeal, and alleging a denial of due process. The PCR court ruled Lucas was entitled to a belated appeal of his direct appeal issues pursuant to *White v. State*, 263 S.C. 110, 208 S.E.2d 35 (1974). Thereafter, this Court affirmed three of Lucas' direct appeal issues pursuant to Rule 220(b), SCACR. However, we granted certiorari to review the direct appeal issue concerning denial of counsel's motion to be relieved and denial of Lucas' motion for a mistrial.

### ISSUE

Where an attorney forms a good faith basis for suspecting his client is about to present perjured testimony, and thereafter reveals the suspected perjury to the trial court and moves to be relieved as counsel, does the trial court's denial of the motion to be relieved constitute an abuse of discretion, depriving the defendant of a fair trial?

### DISCUSSION

Pursuant to Rule 407, SCACR, Rules of Professional Conduct (RPC), Rule 3.3:

(a) A lawyer shall not knowingly . . .

(4) Offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

(b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

Rule 1.6(b) of the RPC permits an attorney to reveal client confidences to the extent the lawyer reasonably believes necessary . . . [t]o prevent the client from committing a criminal act. . . . The notes following Rule 1.6 recognize an exception to the general prohibition against disclosure in that a lawyer may not counsel or assist a client in conduct that is criminal or fraudulent, *see* Rule 1.2(d), and has a duty under Rule 3.3(a)(4) not to use false evidence. If the lawyer's services will be used by the client in materially furthering a course of criminal or fraudulent conduct, the lawyer must withdraw, as stated in Rule 1.16(a)(1)(lawyer must withdraw from representation if representation will result in violation of the Rules of Professional Conduct or other law).

In *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), the United States Supreme Court ruled that a criminal defendant's sixth amendment right to effective assistance of counsel was not violated when the attorney refused to cooperate with the defendant in presenting perjured testimony at trial. In *Nix*, the defendant, Whiteside, who was charged with murder, had consistently advised his attorney that although he had not seen a gun in the victim's hand, he was convinced the victim in fact possessed a gun. Shortly before trial, however, Whiteside told counsel he had seen something metallic in the victim's hand. When asked about his change in stories, he told counsel If I don't say I saw a gun, I'm dead. Counsel advised Whiteside that if he insisted upon testifying falsely, counsel would be compelled to advise the court of his belief that Whiteside was committing perjury, and would also move to withdraw as his counsel. Whiteside ultimately testi-

fied in accordance with his original version of events, admitting on cross examination that he had not seen a gun in the victim's hand. After he was convicted of murder, Whiteside sought a new trial, claiming he had been deprived of a fair trial by counsel's admonitions not to testify as to seeing something metallic in the victim's hand. The Iowa Supreme Court affirmed the denial of the new trial motion, ruling counsel's actions were not only permissible, but were required under Iowa law.

Thereafter, Whiteside sought federal habeas corpus relief, alleging he had been denied effective assistance of counsel and of his right to present a defense by counsel's refusal to allow him to testify as proposed. The Court of Appeals for the Eighth Circuit agreed, reasoning that an intent to commit perjury, communicated to counsel, does not alter a defendant's right to effective assistance of counsel and that counsel's admonition that he would advise the court of Whiteside's perjury constituted a threat to violate his duty to preserve client confidences. The Eighth Circuit concluded that the prejudice prong of *Strickland v. Washington*[2] was satisfied by an implication of prejudice from the conflict between counsel's duty of loyalty to Whiteside and his ethical duties. *Whiteside v. Scurr,* 744 F.2d 1323 (8th Cir.1984).

The United States Supreme Court reversed in *Nix,* stating, Although counsel must take all reasonable lawful means to attain the objectives of the client, counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law. 475 U.S. at 166, 106 S.Ct. 988. The Court went on to note that under the Iowa Code of Professional Responsibility, the rules do not merely authorize disclosure by counsel of client perjury, they require such disclosure . . ., *id.* at 168, 106 S.Ct. 988 and that the rules expressly permit withdrawal from representation as an appropriate response of an attorney when the client threatens to commit perjury. *Id.* at 170, 106 S.Ct. 988. The Court concluded that counsel's representation fell well within accepted standards of professional conduct, and did not pose the type of

---

**2.** *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

conflict which would obviate the need for a showing of prejudice under *Strickland v. Washington.*[3]

We find attorney Thrower's actions in the present case consistent with the South Carolina Rules of Professional Conduct. As noted previously, Thrower was prohibited by Rule 3.3. from offering evidence he reasonably believed was false,[4] was authorized by Rule 1.6(b) to reveal confidences necessary to prevent a criminal act, and was permitted to withdraw pursuant to Rule 1.16(a). We find no ethical violation. Moreover, we find no prejudice to Lucas as a result of the trial court's denial of counsel's motion to be relieved.

■ In *Matter of Goodwin,* 279 S.C. 274, 305 S.E.2d 578 (1983), this Court addressed the appropriate action of a trial judge when faced with the situation of an attorney attempting to withdraw due to suspected client perjury. We stated,

While an attorney has an ethical duty not to perpetrate a fraud upon the court by knowingly presenting perjured testimony, the defendant has a constitutional right to representation by counsel. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Had the trial judge allowed the withdrawal, any new attorney he appointed would, if faced with the same conflict, have moved to withdraw, potentially resulting in a perpetual cycle of eleventh-hour motions to withdraw. Worse, new counsel might fail to recognize the problem and unwittingly present false evidence.[5]

---

**3.** The Court stated, Here, there was indeed a conflict, but of quite a different kind; it was one imposed on the attorney by the client's proposal to commit the crime of fabricating testimony ... This is not remotely the kind of conflict of interests dealt with in *Cuyler v. Sullivan* [446 U.S. 335, 100 S.Ct. 1708, 64 L.E.2d 333 (1980)] (allowing a defendant to obtain relief without a showing of prejudice due to counsel's representation of conflicting interests). *Id.* at 176, 106 S.Ct. 988.

**4.** Lucas asserts Thrower did not reasonably believe Brown's testimony would be perjured because he could not say, for certain, that the testimony was in fact false. On the present record, we find Thrower's belief that Brown would commit perjury were entirely reasonable, which is all that is required under the Rules of Professional Conduct.

**5.** Although language in *Goodwin* indicated counsel was prohibited from disclosing the suspected perjury, it was written in 1983, prior to

. . . [M]otions to withdraw must lie within the sound discretion of the trial judge. In making the decision, the trial court must balance the need for the orderly administration of justice with the fact that an irreconcilable conflict exists between counsel and the accused. The court should consider the timing of the motion, the inconvenience to the witnesses, the period of time elapsed between the date of the alleged offense and the trial, and the possibility that any new counsel will be confronted with the same conflict.

279 S.C. at 276–77, 305 S.E.2d at 579 (emphasis supplied). Here, it is patent that any new attorney would have been confronted with the same dilemma. Moreover, the motion to be relieved came nearly half way through a very serious trial. We find no abuse of discretion in the trial court's denial of the motions to be relieved and for a mistrial.

Finally, we find Lucas has demonstrated no prejudice from denial of counsel's motion to be relieved. Although Lucas himself decided to cross-examine his witnesses, he did so of his own volition, with counsel at his side at all times ready to assist in his defense.[6] Further, counsel made all appropriate motions at the close of both the state's case and the close of evidence, and gave a closing statement to the jury. Accordingly, Lucas has failed to demonstrate in what manner his defense was prejudiced by denial of counsel's motion to be relieved. Lucas' convictions and sentences are

**AFFIRMED.**

TOAL, C.J., MOORE and BURNETT, JJ., concur.
PLEICONES, J., not participating.

---

adoption of the Rules of Professional Conduct, which became effective in September 1990, and which specifically permit disclosure of client confidences if necessary to prevent a criminal act.

**6.** In fact, at the outset of trial, by his own request, Lucas was appointed co-counsel to assist in his defense. Further, in response to Lucas' motion for a mistrial, the court noted, I denied his motion [to be relieved], and he still sits there as your lawyer. You don't have to use him if you don't want to, but he's still available.