# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Daniel Hamrick, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2015-002164

---

## ON WRIT OF CERTIORARI

---

Appeal from Charleston County
Deadra L. Jefferson, Trial Court Judge
Larry B. Hyman Jr., Post-Conviction Relief Judge

---

Opinion No. 27886
Heard January 10, 2019 – Filed May 15, 2019

---

## REVERSED

---

Appellate Defenders Jennifer Ellis Roberts and David Alexander, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General William M. Blitch Jr., of Columbia, for Respondent.

---

**JUSTICE FEW:** This is a belated appeal of Daniel Hamrick's conviction for felony driving under the influence resulting in great bodily injury. Hamrick argues the trial court erred in (1) denying his motion to suppress test results from blood drawn

without a search warrant, (2) admitting the blood test results into evidence despite a violation of the three-hour statutory time limit for drawing blood, (3) permitting a police officer to give opinion testimony on accident reconstruction, and (4) excluding from evidence a video recording of an experiment conducted by Hamrick's expert in accident reconstruction. We find the trial court erred in admitting the officer's opinion testimony. We reverse and remand to the court of general sessions for a new trial.

## I.      Facts and Procedural History

Around 3:20 a.m. on November 14, 2011, Daniel Hamrick struck Ahmed Garland—a road construction worker—while driving on U.S. Highway 17 in the town of Mount Pleasant. Garland suffered permanent brain injuries as a result. The State contends Hamrick struck Garland while Garland was stepping off of a paving machine located behind a row of cones delineating the construction zone from the designated lane of travel. Hamrick concedes he struck Garland, but contends it happened in the lane of travel.

Within five minutes of the incident, Officer Daniel Eckert arrived at the scene and administered first aid to Garland. Emergency medical service professionals arrived at the scene less than ten minutes later, and Officer Eckert began interviewing Hamrick and other witnesses. Several witnesses claimed to smell alcohol on Hamrick's breath, and Hamrick admitted he drank one beer earlier in the morning. Officer Eckert asked Hamrick to perform field sobriety tests, but Hamrick refused. At 3:40 a.m., Officer Eckert informed Hamrick he was not free to leave. He instructed Hamrick to remain by the front of Officer Eckert's car.

At 4:08 a.m., Officer Andrew Harris—the lead investigator—arrived. Officer Harris interrogated Hamrick and instructed him to perform sobriety tests. Hamrick performed the tests, which indicated to Officer Harris that Hamrick was intoxicated. At 4:40 a.m., Officer Harris formally placed Hamrick under arrest, handcuffed him, administered *Miranda* warnings to him, and directed officers to transport Hamrick to the Mount Pleasant police station for a breathalyzer test.

When Hamrick arrived at the police station, the breathalyzer machine malfunctioned. After the machine became operational, Hamrick refused to take a breathalyzer test. Officers then took Hamrick to East Cooper Hospital, where at 6:55 a.m., they told Hamrick he was required to provide a blood sample pursuant to the mandatory blood testing provision of subsection 56-5-2946(A) of the South Carolina

Code (2018), and the implied consent provision of subsection 56-5-2950(A) of the South Carolina Code (2018). The officers did not seek a search warrant before drawing Hamrick's blood. Hamrick's blood alcohol concentration measured .113 percent.

Prior to his 2013 trial, Hamrick filed a written motion to suppress the results of his blood test. He argued the warrantless search the police conducted in drawing his blood violated his Fourth Amendment rights because no exigency existed, and there was no other applicable exception to the warrant requirement. He relied on *Missouri v. McNeely*, 569 U.S. 141, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013), decided six months earlier, in which the Supreme Court of the United States held "the natural metabolization of alcohol in the bloodstream [does not] present[] a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing." 569 U.S. at 145, 133 S. Ct. at 1556, 185 L. Ed. 2d at 702; *see also* 569 U.S. at 148, 133 S. Ct. at 1558, 185 L. Ed. 2d at 704 (restating that "a blood sample . . . drawn from a defendant suspected of driving while under the influence of alcohol" is a search under the Fourth Amendment (citing and quoting *Schmerber v. California*, 384 U.S. 757, 767, 86 S. Ct. 1826, 1834, 16 L. Ed. 2d 908, 919 (1966))). The trial court conducted a hearing and considered all of the applicable circumstances, as it was required to do under *Schmerber* and *McNeely*. At the conclusion of the hearing, the court found the exigent circumstances exception excused the warrant requirement on the unique facts presented, and denied the motion to suppress. The court did not address whether the implied consent provision of subsection 56-5-2950(A) excused the warrant requirement.

As an alternative ground for excluding the blood test results from trial, Hamrick argued his blood was not drawn within three hours of Hamrick's arrest as mandated by subsection 56-5-2950(A), which states blood samples "must be collected within three hours of the arrest." Hamrick maintained he was under arrest by 3:40 a.m., when he refused to perform field sobriety tests and Officer Eckert informed him he was not free to leave. The trial court rejected this argument and ruled Hamrick was not under arrest until Officer Harris placed Hamrick in handcuffs and administered *Miranda* warnings at 4:40 a.m.

During trial, Officer Harris testified he documented the point of impact inside the construction zone, as opposed to inside the designated lane of travel. Woodrow Poplin, a mechanical and civil engineer, testified as an expert witness for Hamrick. Poplin testified Officer Harris's reported point of impact was incorrect because Hamrick's car could not have reached that point without knocking over the cones

separating the lane of travel from the construction zone, or without hitting the paving machine. Poplin testified, in his opinion, the collision occurred inside the designated lane of travel. Hamrick offered into evidence a video of an experiment Poplin conducted to determine whether it was possible for Hamrick's car to hit Garland where Officer Harris testified the collision occurred without also hitting the cones or the paving machine. The trial court permitted Poplin to testify about the experiment, but excluded the video from evidence.

The jury found Hamrick guilty of felony driving under the influence resulting in great bodily injury.[1] The trial court sentenced Hamrick to fifteen years in prison. Hamrick's trial counsel failed to appeal, and Hamrick filed a post-conviction relief application alleging counsel was ineffective for not doing so. The post-conviction relief court agreed, and granted Hamrick a belated direct appeal pursuant to *White v. State*, 263 S.C. 110, 208 S.E.2d 35 (1974). As *White* requires,[2] Hamrick filed a petition for a writ of certiorari asking this Court to consider the belated appeal. We transferred the petition to the court of appeals pursuant to Rule 243(l) of the South Carolina Appellate Court Rules. The court of appeals granted certiorari to consider Hamrick's appeal. The court of appeals then transferred the appeal to this Court pursuant to Rules 203(d)(l)(A)(ii) and 204(a) of the South Carolina Appellate Court Rules.[3]

## II.    Analysis

We begin with the trial court's error in permitting Officer Harris to give opinion testimony on the subject of accident reconstruction. This error requires a new trial. We will then address the admissibility of the video of Poplin's experiment and

---

[1] S.C. Code Ann. § 56-5-2945(A)(1) (2018).

[2] In *Davis v. State*, 288 S.C. 290, 342 S.E.2d 60 (1986), we set forth specific procedures litigants should follow pursuing a belated direct appeal, which has now become known as a *White* appeal. 288 S.C. at 291, 342 S.E.2d at 60; *see also* Rule 243(i), SCACR (entitled, "Special Procedures Where a *White v. State* Review Is Sought").

[3] The court of appeals determined Hamrick's suppression argument raised issues regarding the constitutionality of the mandatory testing requirement in subsection 56-5-2946(A), and thus the appeal must be heard by this Court pursuant to Rule 203(d)(l)(A)(ii).

Hamrick's challenges to the admissibility of his blood test results, as those issues will necessarily arise on remand.

## A. Officer Harris's Testimony

To prove Hamrick guilty of felony driving under the influence, in addition to proving he was "under the influence of alcohol," the State must prove he committed "any act forbidden by law or neglect[ed] any duty imposed by law in the driving of the motor vehicle, which . . . proximately cause[d] great bodily injury . . . to another person." § 56-5-2945(A). The State sought to meet this requirement by proving three acts: Hamrick was speeding, he failed to keep a proper lookout, and he struck Garland outside the designated lane of travel. The State put significant—if not primary—emphasis on proving Garland was located outside the designated lane of travel when Hamrick struck him.

The State called several eyewitnesses who were on the scene when it happened. However, none of them testified with specificity to where the impact occurred. The State also called Officer Harris. From the outset of his testimony, the State attempted to demonstrate Officer Harris's qualifications as an expert in accident reconstruction. Throughout his testimony, the State pursued opinion testimony as to whether Hamrick struck Garland in the designated lane of travel or within the construction zone. The State asked, "Through your investigation and documentation of the scene did you develop an approximate point of impact?" Before Officer Harris could complete his answer, Hamrick objected, and the trial court sustained the objection. The State then asked Officer Harris whether he "ma[de] any measurements." Officer Harris's answer was not responsive, and conveyed his opinion on accident reconstruction. He testified, "I marked a possible point of impact based on what information I had been given." Hamrick objected, and the trial court again sustained the objection. The solicitor changed the subject and finished Officer Harris's direct examination on the question of whether Hamrick was intoxicated.

On cross-examination, Hamrick's counsel highlighted many of the deficiencies in Officer Harris's qualifications in accident reconstruction and in the information available to him regarding a specific point of impact. At several points, counsel got Officer Harris to concede he wasn't sure of a point of impact. For example, as to a specific point of impact, Officer Harris testified, "I'm not sure; you are right. I don't have a point of impact."

On re-direct examination, the State resumed asking Officer Harris about his training in accident reconstruction, including the reconstruction of "automobile pedestrian collisions." As a part of his answer to questions about his qualifications, Officer Harris began to explain his opinion on the trajectory of Garland's body after impact. Hamrick objected on the basis of his qualifications. Then, for the first time, the State requested the trial court find Officer Harris met the Rule 702, SCRE, qualification requirement as an expert in accident reconstruction. After Hamrick pointed out Officer Harris had never been found qualified as an expert before, the trial court held an off-the-record conference. The trial court did not rule on the record whether Officer Harris met the qualification requirement. The court stated only, "You may proceed." As we held in *State v. Council*, 335 S.C. 1, 515 S.E.2d 508 (1999), "When admitting [expert testimony[4]] under Rule 702, SCRE, *the trial judge must find . . . the expert witness is qualified . . . .*" 335 S.C. at 20, 515 S.E.2d at 518 (emphasis added).

The State continued attempting to elicit Officer Harris's opinion, asking, "Is there enough evidence . . . to determine the point of impact," and "could you reach a conclusion about point of impact." Even after Officer Harris answered "no" to those questions, the State continued, "Combined with witness testimony and witness statements taken from the scene, does that help you in making that sort of conclusion," referring to Officer Harris's conclusion regarding the point of impact. Hamrick continued to object, in an obvious effort to keep Officer Harris from giving opinion testimony that the impact occurred in the construction zone.

The State then asked Officer Harris whether it was "possible" for Hamrick to have swerved into the construction zone from the designated lane of travel and hit Garland without hitting any cones or the paving machine. Hamrick's counsel immediately stated, "Objection, Judge. . . . He's not been qualified to render such an opinion." Finally, the trial court ruled, stating, "He investigated the accident. He has training and experience. He does not have to be qualified as an expert to render a lay opinion based on his rational perception." After another off-the-record discussion, the court

---

[4] In *Council*, we used the term "scientific evidence." *Id.* In subsequent decisions, however, we made it clear the trial court's gatekeeping responsibility to make findings as to the foundational elements of Rule 702—including whether the expert meets the qualification requirement—applies to all expert testimony. *See, e.g., State v. White*, 382 S.C. 265, 269, 676 S.E.2d 684, 686 (2009) (discussing the "Rule 702, SCRE, qualifications" requirement in the context of non-scientific evidence).

again stated only, "You may proceed." In the testimony that followed, Officer Harris never specifically identified a point of impact. He did, however, give his opinion that the impact did not occur in the designated lane of travel, but occurred behind the cones in the construction zone.

We find the trial court erred in two respects. First, the court incorrectly characterized Officer Harris's testimony as "lay" opinion. Under Rule 701 of the South Carolina Rules of Evidence, lay opinion is "limited to those opinions . . . rationally based on the perception of the witness." Officer Harris arrived on the scene forty-eight minutes after the incident occurred, and thus, he clearly did not perceive the location of the impact.[5] In addition, Rule 701 provides lay opinion is not admissible unless "the witness is not testifying as an expert." *See also* Rule 701, SCRE (providing lay opinion is "limited to those opinions . . . which . . . do not require special knowledge, skill, experience or training"). Accident reconstruction requires expertise,[6] and from the outset, the State sought to establish Officer Harris's qualifications as an expert in accident reconstruction. Officer Harris's testimony was not "lay" opinion, and the trial court erred by characterizing it as such.

Second, the trial court failed to make the necessary findings that the State established the foundation required by Rule 702. *See Council*, 335 S.C. at 20, 515 S.E.2d at 518. The State attempted to do this, but Hamrick repeatedly objected. The specific issue Hamrick raised was whether Officer Harris met the requirement of "qualified as an expert by knowledge, skill, experience, training, or education." Rule 702, SCRE. When Hamrick objected to the testimony on this basis, the trial court

---

[5] *See Jackson v. Price*, 288 S.C. 377, 379-80, 342 S.E.2d 628, 629-30 (Ct. App. 1986) (error to permit highway patrolman—who arrived after the accident—to testify as to point of impact (citing *State v. Kelly*, 285 S.C. 373, 374, 329 S.E.2d 442, 443 (1985) ("A police officer may not give his opinions as to the cause of an accident. He may only testify regarding his direct observations unless he is qualified as an expert."))). While *Kelly* and *Jackson* were decided before our Rules of Evidence, the Note to Rule 701, SCRE, indicates the rule is consistent with prior law. Rule 701, SCRE Note.

[6] *See generally* 31A Am. Jur. 2d *Expert and Opinion Evidence* § 255 (2012) ("Accident reconstruction experts . . . rely on knowledge and the application of the principles of physics, engineering, or other sciences which are beyond the understanding of the average juror." (footnotes omitted)).

conducted off-the-record discussions.  Without putting any finding on the record, the trial court permitted the State to proceed asking Officer Harris questions to elicit his opinion as to the point of impact.  The trial court's failure to make any finding on the record was error.

Our review of the record convinces us Officer Harris did not possess the necessary qualifications to give an opinion in accident reconstruction.  His training in the field was limited to a few courses he took over a period of several years.  He had no other training or education that would otherwise demonstrate he was qualified as an expert to give an opinion on accident reconstruction.  Accident reconstruction is a highly technical and specialized field in which experts employ principles of engineering, physics, and other knowledge to formulate opinions as to the movements and interactions of vehicles and people, under circumstances lay people—even trained officers—simply cannot understand.  A law enforcement officer who attended several classes on the subject does not possess the necessary qualifications to satisfy the "qualified as an expert" element of the Rule 702 foundation.  *See State v. Ellis*, 345 S.C. 175, 177-78, 547 S.E.2d 490, 491 (2001) (officer qualified as an expert in crime scene processing and fingerprint identification was qualified to testify to measurements taken at the scene, recovery of shell casings, and identification of blood stains, but was not qualified to testify regarding the location and position of the victim's body based on crime scene reconstruction); *Kelly*, 285 S.C. at 374, 329 S.E.2d at 443 ("A police officer may not give his opinions as to the cause of an accident.").

Because Officer Harris gave opinion testimony on the subject of accident reconstruction, and the State failed to lay the Rule 702 foundation for his testimony, we find the trial court erred in admitting the testimony.

## B.    Harmless Error

We quickly dispense with any suggestion the trial court's error was harmless.  Officer Harris's opinion testimony was critical to the State's ability to prove an "act forbidden by law" or that Hamrick "neglect[ed] any duty imposed by law in the driving of the motor vehicle," and on that basis prove Hamrick "proximately cause[d] great bodily injury" to Garland.  § 56-5-2945(A).  While the State also presented evidence Hamrick was driving five miles per hour over the speed limit and failed to keep a proper lookout, the burden of proving proximate cause would have been much more difficult for the State to meet if the point of impact was in the lane of travel.

Therefore, we find the error in admitting Officer Harris's opinion testimony regarding the point of impact could not have been harmless.

## C.     Video of Poplin's Experiment

To combat the State's theory the collision occurred inside the construction zone, Hamrick called Poplin to testify about Poplin's investigation of the incident and his opinion the point of impact was in Hamrick's designated travel lane.  To test his opinion, Poplin conducted an experiment to determine whether it was possible for Hamrick to have struck Garland in the construction zone as reported by Officer Harris.  Poplin videotaped his experiment, and Hamrick's counsel sought to introduce the video into evidence.

The trial court expressed concern over Hamrick offering the video into evidence as an attempt to re-create the incident.  The trial court stated, "[T]here's no concrete evidence in the record as to what the point of contact would have been or was, and . . . I cannot be assured of the accuracy of any re-enactment."  The trial court stated, "You normally have video animations if you're re-creating accidents . . . .  But the things that were problematic for me . . . [dealt] with the . . . human element in driving . . . and just the subjective nature of it."  The court also expressed concern the video would mislead the jury.  The court stated, "It is a re-creation.  You want the jury to believe that this is how it happened that night, and that is what becomes problematic about it.  Otherwise you wouldn't be seeking to put it in."  The court allowed Poplin to testify about the details of his experiment, but excluded the video from evidence.

We find the trial court conducted an erroneous analysis of the admissibility of the video.  The proper analysis begins with the question of whether the evidence is relevant.  *See* Rule 402, SCRE ("All relevant evidence is admissible . . . .").  Rule 401 provides evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 401, SCRE.  The video of Poplin's experiment was clearly relevant because the video tended to prove Hamrick could not have struck Garland in the construction zone as the State claimed he did.  Rule 402 also provides relevant evidence may be excluded "as otherwise provided by . . . these rules" or another provision of law.  However, we do not see that any of the trial court's concerns justify excluding the video from evidence under the rules or any other provision of law.

First, we disagree with the trial court's characterization of the video as a re-creation or demonstration of how the incident happened. Certainly, Hamrick offered Poplin's opinion testimony generally to demonstrate how the incident did happen. But the video was offered to prove how the incident did not happen. It was substantive evidence—not demonstrative—offered to prove Hamrick's car could not have struck Garland inside the construction zone—as Officer Harris testified it had—without also knocking over the cones or striking the paving machine. *See* 2 Michael H. Graham, *Handbook of Federal Evidence* § 401:10 (8th ed. 2018) ("The results of experiments are substantive evidence, . . . . Sometimes the purpose of the experiment is to determine how a particular event . . . did not occur." (footnote omitted)). As substantive, relevant evidence, the trial court did not have the discretion to exclude the video except in reliance upon a specific, applicable rule or other provision of law.

Further, if the trial court was concerned the video would mislead the jury, it was required to conduct an on-the-record Rule 403 analysis. *See* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."); *State v. Spears*, 403 S.C. 247, 254, 742 S.E.2d 878, 881 (Ct. App. 2013) (holding "the trial court erred by failing to conduct an on-the-record Rule 403 balancing test"). The State made the "possibility" of Hamrick hitting Garland in the construction zone an issue through the testimony of Officer Harris. Poplin testified the experiment showed it was not possible for the impact to have occurred in the construction zone. The probative value of Poplin's video included showing the jury whether Poplin aggressively attempted to make the vehicle do what Officer Harris testified it did, and whether Poplin placed the cones and paver to accurately represent their location on the night of the incident. The trial court did not analyze this or any other probative value.

Because we reverse on the error of the admission of Officer Harris's opinion testimony, and because the probative value of Poplin's video may be different in the absence of that testimony, it is not necessary for us to rule whether the trial court abused its discretion in excluding the video. On remand, however, the trial court should consider the State's objections to the video under the proper legal framework.

### D.     Motion to Suppress Blood Test Results

The State offered the results of Hamrick's blood test as part of its effort to prove Hamrick was "under the influence of alcohol" as required by subsection 56-5-

2945(A). Hamrick moved to exclude the results for a statutory violation, and to suppress the results for a constitutional violation. We address each argument in turn.

### i. Three-Hour Statutory Requirement

We first discuss Hamrick's motion to exclude the test results based on the timing requirement in subsection 56-5-2950(A), which provides samples other than breath samples "must be collected within three hours of the arrest." We find the trial court did not err in refusing to exclude the test results on this ground. Even if Hamrick's arrest occurred outside of the three-hour statutory timeframe, the only exclusionary provision that could apply is set forth in subsection 56-5-2950(J) of the South Carolina Code (2018), which provides,

> The failure to follow policies, procedures, and regulations, or the provisions of this section, shall result in the exclusion from evidence of any test results, if the trial judge or hearing officer finds that this failure materially affected the accuracy or reliability of the test results or the fairness of the testing procedure . . . .

§ 56-5-2950(J). It is not clear to us how the failure to draw Hamrick's blood within three hours of his arrest "materially affected the accuracy or reliability of the test results or the fairness of the testing procedure." There is no evidence the delay in drawing Hamrick's blood resulted in anything but a test result showing a lower blood alcohol concentration than would have been shown if the test were timely conducted. *See generally McNeely*, 569 U.S. at 145, 133 S. Ct. at 1556, 185 L. Ed. 2d at 702 (discussing "the natural metabolization of alcohol in the bloodstream"). There is no suggestion of any other problem with the testing procedures. Therefore, the trial court did not err in refusing to exclude the blood test results on this basis.

### ii. Fourth Amendment Ground for Suppression

Hamrick argued the test results should be suppressed because his blood was drawn without a warrant, in violation of the Fourth Amendment. We find that even if there was a Fourth Amendment violation, the good-faith exception to the exclusionary rule applies, and therefore, the test results will not be suppressed.

The "compulsory administration of a blood test . . . plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment." *Schmerber*,

384 U.S. at 767, 86 S. Ct. at 1834, 16 L. Ed. 2d at 918. "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 382, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430, 439 (2014); *see also State v. Weaver*, 374 S.C. 313, 319, 649 S.E.2d 479, 482 (2007) ("[A] warrantless search will withstand constitutional scrutiny where the search falls within one of several well-recognized exceptions to the warrant requirement.").

There are two exceptions to the warrant requirement that could be applicable in this case—consent and exigent circumstances. *See generally State v. Counts*, 413 S.C. 153, 163, 776 S.E.2d 59, 65 (2015) (providing "consent" and "exigent circumstances" are recognized exceptions to the warrant requirement). The exigent circumstances exception "'applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment.'" *McNeely*, 569 U.S. at 148-49, 133 S. Ct. at 1558, 185 L. Ed. 2d at 704 (quoting *Kentucky v. King*, 563 U.S. 452, 460, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865, 874-75 (2011)). As to consent, pursuant to South Carolina's implied consent statute, subsection 56-5-2950(A), Hamrick is deemed by law to have consented to have his blood drawn by virtue of driving a motor vehicle in South Carolina, unless he withdraws his consent as contemplated in subsection 56-5-2950(H).

The exclusionary rule is a "judicially created remedy" for a Fourth Amendment violation. *Davis v. United States*, 564 U.S. 229, 238, 131 S. Ct. 2419, 2427, 180 L. Ed. 2d 285, 294 (2011). "[T]he *sole* purpose of the exclusionary rule is to deter misconduct by law enforcement." 564 U.S. at 246, 131 S. Ct. at 2432, 180 L. Ed. 2d at 300. The rule does not apply "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful." 564 U.S. at 238, 131 S. Ct. at 2427, 180 L. Ed. 2d at 295. "Where there is no misconduct, and thus no deterrent purpose to be served, suppression of the evidence is an unduly harsh sanction." *State v. Adams*, 409 S.C. 641, 653, 763 S.E.2d 341, 348 (2014).

When the officers made the decision to draw Hamrick's blood without a warrant, the law appeared to support the existence of exigent circumstances and the validity of statutory implied consent. There is nothing in this record that in any way suggests the officers did not "act with an objectively 'reasonable good-faith belief' that their conduct is lawful." Therefore, we decline to address whether the exigent circumstances or consent exceptions to the warrant requirement applied on the facts

of this case, because even if we found no exception applied, we would find the good-faith exception to the exclusionary rule forecloses suppression.

### III.  Conclusion

We **REVERSE** Hamrick's conviction for felony driving under the influence resulting in great bodily injury and remand for a new trial.

**REVERSED.**

**BEATTY, C.J., KITTREDGE, JAMES, JJ., and Acting Justice Thomas E. Huff, concur.**