# The Supreme Court of South Carolina

The State, Respondent,

v.

Mary Ann German, Appellant.

Appellate Case No. 2018-002090

_____

ORDER

_____

By opinion filed on April 5, 2023, the Court issued an opinion in the above matter. *State v. German*, Opinion No. 28149 (Howard Adv. Sh. No. 13 at 67). We hereby withdraw that opinion and substitute the attached opinion. The only change is the addition of a separate concurrence authored by Justice James, in which Justice Kittredge concurs.

s/ Donald W. Beatty                          C.J.

s/ John W. Kittredge                          J.

s/ John Cannon Few                          J.

s/ George C. James, Jr.                          J.

s/ Kaye G. Hearn                          A.J.

Columbia, South Carolina
April 19, 2023

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Mary Ann German, Appellant.

Appellate Case No. 2018-002090

―――――――――

Appeal from Beaufort County
Brooks P. Goldsmith, Circuit Court Judge

―――――――――

Opinion No. 28149
Heard September 21, 2021 – Filed April 5, 2023
Re-Filed April 19, 2023

―――――――――

## AFFIRMED

―――――――――

Appellate Defender David Alexander, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Joshua Abraham Edwards, both of Columbia; Solicitor Isaac McDuffie Stone, III, of Bluffton, all for Respondent.

―――――――――

**CHIEF JUSTICE BEATTY:** Appellant was convicted of felony driving under the influence ("DUI") resulting in death and sentenced to eleven years'

incarceration.  Before trial, Appellant moved to suppress evidence of her blood alcohol content ("BAC") obtained through a warrantless blood draw, which was taken pursuant to section 56-5-2946 of the South Carolina Code[1] while she was hospitalized after an automobile accident.  Finding that section 56-5-2946 was constitutional as applied and unchanged by the holdings of *McNeely*[2] and *Birchfield*,[3] the trial court denied the motion to suppress.  The court concluded that

---

[1] Section 56-5-2946 provides in relevant part:

> (A) Notwithstanding any other provision of law, a person *must submit* to either one or a combination of chemical tests of his breath, blood, or urine for the purpose of determining the presence of alcohol, drugs, or a combination of alcohol and drugs if there is probable cause to believe that the person violated or is under arrest for a violation of Section 56-5-2945 [felony DUI].

> (B) The tests must be administered at the discretion of a law enforcement officer.  The administration of one test does not preclude the administration of other tests.  The resistance, obstruction, or opposition to testing pursuant to this section is evidence admissible at the trial of the offense which precipitated the requirement for testing. A person who is tested or gives samples for testing may have a qualified person of his choice conduct additional tests at his expense and must be notified of that right.  A person's request or failure to request additional blood or urine tests is not admissible against the person in the criminal trial.

S.C. Code Ann. § 56-5-2946(A)–(B) (2018) (emphasis added).

[2] *Missouri v. McNeely*, 569 U.S. 141 (2013) (holding the natural metabolization of BAC does not create a per se exigency as an exception to the Fourth Amendment's warrant requirement).

[3] *Birchfield v. North Dakota*, 579 U.S. 438 (2016) (holding warrantless breath tests, but not blood tests, are permitted as searches incident to arrest under the Fourth Amendment).

law enforcement had probable cause to suspect Appellant of felony DUI and properly obtained the blood draw pursuant to section 56-5-2946.

Appellant appealed her conviction based on the denial of her motion, and the court of appeals requested certification pursuant to Rule 204(b), SCACR. We agreed to consider whether the warrantless blood draw based on section 56-5-2946 violated Appellant's Fourth Amendment rights or her rights under the South Carolina Constitution and, in effect, whether section 56-5-2946 is constitutional.

We conclude section 56-5-2946 is facially constitutional but unconstitutional as applied in Appellant's case. However, we find the trial court did not err in denying Appellant's motion to suppress because law enforcement acted in good faith based on existing precedent at the time of the blood draw. We affirm Appellant's conviction.

## I. FACTS

On July 9, 2016, Appellant and her husband were diverted from their vacation camping plans due to traffic and decided to pull off Highway 21 in Beaufort County. The couple decided to rest for the evening and have a few drinks at a bar, known locally as "Archie's." There, patrons offered the couple an all-you-can-drink bracelet for ten dollars as part of an event being held that night. The bar served "free pouring" liquor, and Appellant consumed a beer and four to six vodka drinks.

Around 12:30 a.m., Appellant drove their truck off the property. Upon leaving the parking lot, Appellant entered the road, ran the stop sign before Highway 21, and drove into the wrong side of the divided highway. Her truck collided with a sedan head-on, and, tragically, the other driver did not survive the collision.

Paramedics, firefighters, and police officers all responded to the collision. First responders extracted Appellant and her husband from the vehicle, and a responding officer noted an alcoholic odor emanating from each of them. The responding paramedics placed Appellant into an ambulance and noted an ethanol smell from Appellant. In response to paramedics' questions, Appellant heavily slurred her speech. One paramedic testified Appellant was intoxicated.

In the early morning hours of July 10, 2016, Appellant arrived at Beaufort Memorial Hospital by EMS on a backboard, and medical professionals expressed concern she had a serious head injury. However, Appellant's only ultimate injury was a laceration on the bottom of her foot. Later, Appellant became belligerent and

agitated. The emergency room physician testified that, based on her medical opinion, Appellant was intoxicated.

After arriving on the scene of the collision, a state trooper went to the hospital to obtain a blood draw from Appellant, who was the driver of the truck involved in the accident. Based on hearing information from other law enforcement officers, being at the scene himself, and observing Appellant at the hospital, the trooper suspected Appellant of felony DUI. He placed Appellant under arrest at the hospital around 2:00 a.m.

The trooper read Appellant her rights pursuant to the implied consent statute. However, instead of reading the felony DUI advisement of rights form, he read Appellant the advisement of rights form for misdemeanor DUI because he inadvertently "grabbed the wrong form." Regardless, Appellant resisted cooperation and refused to sign the paperwork detailing her rights. The emergency room physician declined to release Appellant for a breath test within the two-hour window to take Appellant to a police station for a breath test as required by law.[4] Because the trooper could not administer a breath test in the hospital, he ordered a blood draw while Appellant was in a hospital bed.[5] Appellant's BAC registered 0.275%.

---

[4] *See* S.C. Code Ann. § 56-5-2950(A) (2018) ("At the direction of the arresting officer, the person first must be offered a breath test to determine the person's alcohol concentration. If the person is physically unable to provide an acceptable breath sample because the person has an injured mouth, is unconscious or dead, *or for any other reason considered acceptable by the licensed medical personnel*, the arresting officer may request a blood sample to be taken . . . . A breath sample taken for testing must be collected *within two hours of the arrest*. Any additional test to collect other samples must be collected within three hours of the arrest." (emphasis added)).

[5] Pursuant to section 56-5-2946, if there is probable cause to believe an individual violated the felony DUI statute or is under arrest for felony DUI, he or she "*must submit* to either one or a combination of chemical tests of his breath, blood, or urine for the purpose of determining the presence of alcohol, drugs, or a combination of alcohol and drugs." S.C. Code Ann. § 56-5-2946(A) (2018) (emphasis added); *see also State v. Long*, 363 S.C. 360, 363, 610 S.E.2d 809, 811 (2005) (holding in a felony DUI case, an officer need not offer a breath test as the first testing option, nor

The trooper was the only officer at the hospital, and neither he nor any other responding officer sought a warrant to collect the sample of Appellant's blood. He conceded on cross examination that his office had provided him with a number to reach a magistrate late at night and he had used the number before. He also admitted it was "[p]ossible" to obtain a warrant; however, he explained that he did not seek a warrant because he "was trained . . . when [he] came into law enforcement" that "if there's a felony DUI involving death, [he] [did] not need permission." He told Appellant, "like it or not, we are getting a blood draw."

Three months before trial, the court heard arguments on Appellant's motion to suppress evidence of the blood draw and its results. Appellant focused her argument on an as-applied challenge rather than a facial challenge to the constitutionality of the statute. Specifically, she believed there is a way to read the statute such that a person, who is suspected upon probable cause of committing felony DUI, must consent. However, Appellant maintained that, under the facts in this case, a search warrant was necessary and only a neutral and detached magistrate could determine probable cause for a search warrant. Conversely, the State argued that, under section 56-5-2946, the probable cause to arrest Appellant for felony DUI is sufficient to eliminate the need to obtain a warrant. The State waived its argument that the officer relied on the exceptions for a search incident to an arrest or exigent circumstances and, instead, relied solely on the felony DUI statute.

The court, finding the statute constitutional as applied, ultimately adopted the State's arguments and denied the motion to suppress. Appellant renewed the motion throughout trial, and this appeal followed.

## II. STANDARD OF REVIEW

"[A]ppellate review of a motion to suppress based on the Fourth Amendment involves a two-step analysis. This dual inquiry means we review the trial court's factual findings for any evidentiary support, but the ultimate legal conclusion . . . is a question of law subject to de novo review." *State v. Frasier*, 437 S.C. 625, 633–34, 879 S.E.2d 762, 766 (2022).

---

must the officer obtain a medical opinion that such a test is not feasible before ordering a blood test or urine sample).

"This Court has a limited scope of review in cases involving a constitutional challenge to a statute because all statutes are presumed constitutional and, if possible, will be construed to render them valid." *Curtis v. State*, 345 S.C. 557, 569, 549 S.E.2d 591, 597 (2001). "Further, a legislative act will not be declared unconstitutional unless its repugnance to the Constitution is clear and beyond a reasonable doubt." *Id*. at 570, 549 S.E.2d at 597.

## III.  DISCUSSION

Appellant contends the trial court erred in denying her motion to suppress the BAC results because the warrantless blood draw violated the Fourth Amendment's prohibition against unreasonable searches and seizures. Appellant further argues the warrantless blood draw violated her right against unreasonable invasions of privacy in South Carolina's Constitution. Additionally, Appellant avers the State waived any reliance on the exceptions for exigent circumstances and a search incident to an arrest. Even if preserved, Appellant maintains the State failed to prove an applicable exception that would justify the warrantless blood draw. Finally, Appellant contends any error in admitting the BAC results cannot be harmless.

In response, the State claims the trial court correctly denied Appellant's motion to suppress the BAC results. The State argues the warrantless search was reasonable because exigent circumstances existed and the search was a permissible search incident to a lawful arrest. The State further maintains the good-faith exception applies and, if the trial court erred, the error was harmless.

Initially, we note that our appellate courts have said that an operator of a motor vehicle in South Carolina is not required to submit to alcohol or drug testing. *Sanders v. S.C. Dep't of Motor Vehicles*, 431 S.C. 374, 383, 848 S.E.2d 768, 773 (2020) (citing *S.C. Dep't of Motor Vehicles v. Nelson,* 364 S.C. 514, 522, 613 S.E.2d 544, 548 (Ct. App. 2005)). Both *Sanders* and *Nelson* involved suspended driver's licenses due to refusal to submit to an alcohol breath test. However, these cases are distinguishable from the case now before this Court because they involved civil penalties, not criminal convictions; they did not address the constitutionality of the statutes; and the decisions appear to be founded on statutory interpretation. Nonetheless, it is arguable that our appellate courts have spoken on the issue of mandatory alcohol and blood testing, even if some may view it as dicta. In any case, clarity of the law is needed.

### A.  Constitutionality under the Fourth Amendment to the U.S. Constitution

This Court has recognized that a blood draw is a search and seizure under the Fourth Amendment in a triad of cases dealing with our implied consent statutes. *See State v. Key*, 431 S.C. 336, 344, 848 S.E.2d 315, 318 (2020) (remanding the case for a determination of exigent circumstances which the State has the burden to establish); *State v. McCall*, 429 S.C. 404, 410, 839 S.E.2d 91, 93 (2020) (holding exigent circumstances justified the warrantless blood draw); *Hamrick v. State*, 426 S.C. 638, 654, 828 S.E.2d 596, 604 (2019) (declining to address exigent circumstances where the good-faith exception justified the warrantless blood draw). Further, the United States Supreme Court has held a blood draw is a search under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966).

Under the Fourth Amendment, people are free from unreasonable searches and seizures by their government. *McCall*, 429 S.C. at 409, 839 S.E.2d at 93. A warrantless search is unreasonable per se, unless it falls within a recognized exception to the warrant requirement. *Riley v. California*, 573 U.S. 373, 382 (2014); *see also State v. Weaver*, 374 S.C. 313, 319, 649 S.E.2d 479, 482 (2007) (noting a warrantless search is *per se* unreasonable). The recognized exceptions to the warrant requirement are search incident to a lawful arrest, hot pursuit, stop and frisk, the automobile exception, the plain view doctrine, consent, and abandonment. *State v. Counts*, 413 S.C. 153, 163, 776 S.E.2d 59, 65 (2015). Three exceptions to the warrant requirement are considered here: search incident to a lawful arrest, consent, and exigent circumstances.

During the pretrial suppression hearing, the State argued that the blood draw was taken solely pursuant to section 56-5-2946 and expressly waived any reliance on the search incident to a lawful arrest and exigent circumstances exceptions. Accordingly, we decline to address these exceptions to the warrant requirement. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge."). In our analysis, we depend solely on the consent exception to the warrant requirement; however, we briefly discuss the other exceptions as they have developed.

South Carolina's implied consent statute provides in relevant part:

[A] person *must submit* to either one or a combination of chemical tests of his breath, blood, or urine for the purpose of determining the presence of alcohol, drugs, or a combination of alcohol and drugs if

there is probable cause to believe that the person violated or is under
arrest for a violation of Section 56-5-2945 [felony DUI].

S.C. Code Ann. § 56-5-2946(A) (2018) (emphasis added). Although our
jurisprudence already has considered our implied consent statutes, we have not yet
directly addressed their constitutionality. In *McCall*, we reserved that question for
a future case: "While we leave this question for another day, we do note numerous
courts have cast doubt on the constitutionality of similar implied consent statutes."
429 S.C. at 413 n.3, 839 S.E.2d at 95 n.3. We address that question today.

Over the years, we have seen a jurisprudential movement, in both this Court
and the United States Supreme Court, calling into question the constitutionality of
implied consent statutes. In *Schmerber*, the United States Supreme Court recognized
that, despite the usual need for a warrant, an officer might have reasonably believed
there was an emergency and a blood draw was an appropriate search incident to an
arrest. 384 U.S. at 770–71 (holding the case specific facts allowed a warrantless
blood draw because the officer might have reasonably believed there was an
emergency). However, years later, the United States Supreme Court held the
dissipation of alcohol in the blood alone does not categorically create an exigent
circumstance. *Missouri v. McNeely*, 569 U.S. 141, 156 (2013) (holding the
warrantless blood draw of a suspected drunk driver as an exigent circumstance
requires a "case-by-case analysis under the totality of the circumstances"). In
*McNeely*, the United States Supreme Court justified the previous holding in
*Schmerber* with its specific facts. *Id*. at 152, 156.

More recently, in *Birchfield v. North Dakota*, the United States Supreme
Court held a warrantless blood draw cannot be taken as a search incident to an
arrest.[6] 579 U.S. 438, 476 (2016). The Court considered the more intrusive nature

---

[6] At oral argument, the State asked this Court to limit *Birchfield* to its facts—a
misdemeanor DUI—as part of its argument that the blood draw was a valid search
incident to arrest. In *Birchfield*, the United States Supreme Court held a breath test,
but not a blood test, may be administered as a search incident to a lawful arrest. 579
U.S. at 476. We, however, decline to apply *Birchfield* to only misdemeanor DUI
cases because the United States Supreme Court in no way limited its holding in
*Birchfield* to only misdemeanor cases. In fact, the Court weighed the government's
interest in preventing traffic fatalities with privacy interests in light of the "carnage"

of a blood draw against the less intrusive breath test because a blood draw pierces the skin, takes a sample from the body, and preserves it indefinitely. *Id*. at 463–64, 474. Breath tests, the Court said, are permissible as searches incident to arrests because they have little physical intrusion, the test only reveals the amount of alcohol in the person's breath, and participation in the test is unlikely to enhance the arrestee's embarrassment. *Id*. at 461–63.

In 2019, the United States Supreme Court again revisited the doctrine of exigent circumstances when considering a challenge to an implied consent statute. *Mitchell v. Wisconsin*, 139 S. Ct. 2525 (2019). There, the Court refined its holdings in *Schmerber* and *McNeely* to permit an exigent circumstances exception when, "(1) BAC evidence is dissipating and (2) some other factor creates pressing health, safety, or law enforcement needs that would take priority over a warrant application." *Id*. at 2537. The Court noted, "[B]oth conditions are met when a drunk-driving suspect is unconscious." *Id*. Yet, the Court made clear:

> We do not rule out the possibility that in an unusual case a defendant would be able to show that his blood would not have been drawn if police had not been seeking BAC information, and that police could not have reasonably judged that a warrant application would interfere with other pressing needs or duties.

*Id*. at 2539. However, in *Key*, we declined to place the burden of proving the absence of an exigency on the defendant:

> We cannot sponsor the notion of requiring a defendant to prove that this right—a right she already possesses—exists in any given case. We must therefore part company with the *Mitchell* Court, as we will not impose upon a defendant the burden of establishing the absence of exigent circumstances. We have consistently held the prosecution has the sole burden of proving the existence of an exception to the warrant requirement.

431 S.C. at 348, 848 S.E.2d at 321 (internal citations omitted).

---

and "slaughter" caused by drunk drivers. *Id*. at 465. We believe the Court, in its analysis, considered the government's heightened interest in preventing felony DUIs.

Similarly, this Court has seen a gradual movement in our case law governing South Carolina's implied consent statutes. First, in interpreting section 56-5-2946, we held an officer need not offer first a breath test before ordering a blood test for a felony DUI suspect. *State v. Long*, 363 S.C. 360, 363, 610 S.E.2d 809, 811 (2005). We then declined to address the constitutionality of our implied consent statute in *Hamrick*, where the good-faith exception to the exclusionary rule applied. 426 S.C. at 655, 828 S.E.2d at 604–05. In *McCall*, we reserved the question of section 56-5-2946's constitutionality and held exigent circumstances otherwise justified the warrantless blood draw. 429 S.C. at 413, 839 S.E.2d at 95. Most recently, in *Key*, we ruled, even when the suspect is unconscious, the prosecution has the sole burden of proving exigent circumstances. 431 S.C. at 348, 848 S.E.2d at 321. Parting ways with the *Mitchell* Court, we remanded the case for that determination. *Id*. at 349, 848 S.E.2d at 321.

Notwithstanding the development in the law, we continue to recognize the wisdom of implied consent statutes and note their valid, remedial purposes. *See Sanders v. S.C. Dep't of Motor Vehicles*, 431 S.C. 374, 848 S.E.2d 768 (2020) (affirming the suspension of a driver's license where the suspected driver refused to take a BAC test).[7] Drivers in South Carolina do not hold a right to operate motor vehicles but, instead, have a privilege subject to reasonable regulation. *Id*. at 382–83, 848 S.E.2d at 773. Valid purposes behind regulating conduct with implied consent statutes include obtaining best evidence of a driver's BAC and promoting traffic safety by removing dangerous drivers from the roads. *Id*. at 383, 848 S.E.2d at 773.

Moreover, the distinction between a categorical exception and a general exception to the Fourth Amendment informs our judgment. The United States Supreme Court has recognized a limited class of categorical exceptions to the warrant requirement. *McNeely*, 569 U.S. at 150 n.3. The two types are distinguished by whether or not the exception requires a factually specific inquiry on a case-by-case basis. *Id*. Categorical exceptions, including the automobile exception[8] and the

---

[7] We also recognize the United States Supreme Court in *Birchfield* noted the general validity of implied consent statutes. 579 U.S. at 476–77. The *Birchfield* Court called only a warrantless blood draw as a search incident to an arrest into question.

[8] *See, e.g.*, *California v. Acevedo*, 500 U.S. 565, 580 (1991) ("We therefore interpret *Carroll* [*Carroll v. United States*, 267 U.S. 132 (1925)] as providing one rule to govern all automobile searches. The police may search an automobile and the

search incident to a lawful arrest exception,[9] do not require "an assessment of whether the policy justifications underlying the exception . . . are implicated in a particular case."  *Id*.  On the other hand, general exceptions require case-by-case inquiries and analyses.  *Id*.

Consent operates as a general exception because it demands a fact-specific determination of whether the suspect invoked her consent.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973) ("Similar considerations lead us to agree [] that the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.").

In analyzing the constitutionality of section 56-5-2946, we must also consider the difference between as-applied and facial constitutional challenges.  "The line between facial and as-applied relief is [a] fluid one, and many constitutional challenges may occupy an intermediate position on the spectrum between purely as-applied relief and complete facial invalidation."  *Doe v. State*, 421 S.C. 490, 502, 808 S.E.2d 807, 813 (2017) (quoting 16 C.J.S. *Constitutional Law* § 153, at 147 (2015)) (holding petitioner could only make an as-applied challenge because petitioner did not attack the acts as a whole and this Court has a preference to remedy constitutional infirmities in the least restrictive way possible).  "The distinction is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint."  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).

"One asserting a facial challenge claims that the law is 'invalid *in toto*—and therefore incapable of any valid application.'"  *Doe*, 421 S.C. at 502, 808 S.E.2d at 813 (quoting *Steffel v. Thompson*, 415 U.S. 452, 474 (1974)).  "A facial challenge is an attack on a statute itself as opposed to a particular application."  *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 415 (2015).  Under a facial challenge, "a

---

containers within it where they have probable cause to believe contraband or evidence is contained.").

[9] *See, e.g.*, *United States v. Robinson*, 414 U.S. 218, 235 (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.").

plaintiff must establish that a 'law is unconstitutional in all of its applications.'" *Id.* at 418 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)). Conversely, "[i]n an 'as-applied' challenge, the party challenging the constitutionality of the statute claims that the 'application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional.'" *Doe*, 421 S.C. at 503, 808 S.E.2d at 813 (citation omitted).

Returning to the question presented, we recognize an implied consent statute cannot allow what the Fourth Amendment prohibits. Therefore, to satisfy the requirements of the United States Constitution, a warrantless blood draw pursuant to section 56-5-2946 generally must rely on the consent exception[10] to the warrant requirement.[11]

The Fourth Amendment requires a finding that consent be given voluntarily under the totality of the circumstances. *Palacio v. State*, 333 S.C. 506, 514, 511 S.E.2d 62, 66 (1999) (citing *Katz v. United States*, 389 U.S. 347 (1967); *United States v. Durades*, 929 F.2d 1160 (7th Cir. 1991); *United States v. Zapata*, 997 F.2d 751 (10th Cir. 1993)); *see also Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) (holding consent as an exception to the warrant requirement must be voluntarily given). We further recognize that a valid finding of consent requires a suspect to be able to refuse or revoke consent. *See State v. Bruce*, 412 S.C. 504, 511, 772 S.E.2d 753, 756 (2015) (holding a suspect did not object to an officer picking up keys to access a car during a search to which the suspect consented); *State v. Prado*, 960 N.W.2d 869, 879–80 (Wis. 2021) (noting a person has a constitutional right to refuse a warrantless search). Consequently, implied consent cannot justify a categorical exception to the general warrant requirement.

Here, the trial court unconstitutionally applied section 56-5-2946 to the warrantless search of Appellant's blood. Because the statute is not unconstitutional

---

[10] *But see Mitchell*, 139 S. Ct. at 2531 (recognizing exigent circumstances almost always allows a warrantless blood test).

[11] Despite the State's insistence that section 56-5-2946 is constitutional as a search incident to an arrest, we find, fundamentally, it must rely on consent. As *Birchfield* made clear, a blood draw cannot be constitutional as a search incident to an arrest, and we decline to limit *Birchfield* to its facts. *See supra* n.6.

in all its applications, Appellant brings an as-applied challenge to its constitutionality. As applied, the trial court should have conducted an inquiry into Appellant's consent to determine whether her Fourth Amendment rights were violated. Several cases from other jurisdictions, among others,[12] have followed and applied this reasoning, often recognizing statutes as invalid when they do not fall within an exception to the warrant requirement.

In *Prado*, the Supreme Court of Wisconsin found Wisconsin's incapacitated driver provision unconstitutional beyond a reasonable doubt because it did not fit within any recognized exceptions to the warrant requirement. 960 N.W.2d at 878. There, the court distinguished the exigent circumstances exception and the consent exception to the Fourth Amendment's warrant requirement. *Id*. at 879. Turning to consent, the court made the following finding:

> In the context of warrantless blood draws, consent "deemed" by statute is not the same as actual consent, and in the case of an incapacitated driver the former is incompatible with the Fourth Amendment. Generally, in determining whether constitutionally sufficient consent is present, a court will review whether consent was given in fact by words, gestures, or conduct. This inquiry is fundamentally at odds with the concept of "deemed" consent in the case of an incapacitated driver because an unconscious person can exhibit no words, gestures, or conduct to manifest consent.

*Id*. (internal citations omitted). The court further recognized that "[t]he concept of a statutory per se exception to the warrant requirement violates both *McNeely* and *Birchfield*," as we agree today. *Id*. at 880; *supra* nn.6 & 7. Although the Wisconsin court considered the constitutionality of the incapacitated driver provision,

---

[12] *See, e.g.*, *Commonwealth v. Myers*, 164 A.3d 1162, 1173 (Pa. 2017) ("In recent years, a multitude of courts in our sister states have interpreted their respective—and similar—implied consent provisions and have concluded that the legislative proclamation that motorists are deemed to have consented to chemical tests is insufficient to establish the voluntariness of consent that is necessary to serve as an exception to the warrant requirement."); *State v. Wulff*, 337 P.3d 575, 581 (Idaho 2014) ("[I]rrevocable implied consent operates as a per se rule that cannot fit under the consent exception because it does not always analyze the voluntariness of that consent.").

distinguishable from our statute, here, Appellant had the ability to exhibit and effectuate words, gestures, and conduct to manifest her opposition to the search. Seeing as the court was concerned about unconscious drivers not having the ability to evince consent, there exists no greater manifestation than when the suspect is conscious.

Further, in *Williams v. State*, the Supreme Court of Georgia reiterated, "[T]his [c]ourt plainly distinguished compliance with the implied consent statute from the constitutional question of whether a suspect gave *actual consent* for the state-administered testing."  771 S.E.2d 373, 376 (Ga. 2015).  There, because the trial court did not determine whether the defendant gave his consent under the exception, the Supreme Court of Georgia vacated the judgment and remanded the case to determine the voluntariness of the consent under the totality of the circumstances. *Id*. at 377.

Additionally, in *State v. Yong Shik Won*, the Supreme Court of Hawaii found, "[I]n order to legitimize submission to a warrantless BAC test under the consent exception, consent may not be predetermined by statute, but rather it must be concluded that, under the totality of the circumstances, consent was in fact freely and voluntarily given."  372 P.3d 1065, 1080 (Haw. 2015).  In considering Hawaii's implied consent law, the court further found, "[A] person may refuse consent to submit to a BAC test under the consent exception, and the State must honor that refusal."  *Id*.

Again, analyzing consent, the Supreme Court of Nevada, in *Byars v. State*, found the exigent circumstances exception did not justify the warrantless blood draw.  336 P.3d 939, 944–45 (Nev. 2014).  The state, there, argued consent was implied from the driver's decision to drive on Nevada's roads.  *Id*.  However, the court held consent cannot be irrevocable by electing to drive on Nevada's roads.  *Id*. Further, the implied consent statute allowing for an officer to use force to obtain a blood sample could not be read constitutionally because it does not allow a driver to withdraw consent and, thus, is not given voluntarily.  *Id*. at 946.

Turning to the instant case, we conclude Appellant did not consent to the warrantless blood draw while hospitalized on the night of the accident.  First, the state trooper acknowledged that he could have procured a warrant, yet he decided to order the blood draw without one.  As he testified, he relied solely on what he thought section 56-5-2946 authorized.  Second, Appellant refused to sign the implied consent form the state trooper presented to her, even though it was the wrong form.

Appellant's signature was marked, "refused to sign." Third, Appellant, by her actions, did not impliedly consent. She became belligerent and was obstinate with hospital personnel. Fourth, when ordering the blood draw, the state trooper told Appellant, "like it or not, we are getting a blood draw." Under the totality of the circumstances, by her actions, Appellant refused to consent to the warrantless search. Because the state trooper proceeded anyway and section 56-5-2946 does not exist as a separate exception to the general warrant requirement, the blood draw was an unreasonable search and seizure under the Fourth Amendment.

Although we find section 56-5-2946 unconstitutional as applied to Appellant, we conclude this section is facially constitutional. "Finding a statute or regulation unconstitutional as applied to a specific case does not affect the facial validity of that provision." *Travelscape v. S.C. Dep't of Revenue*, 391 S.C. 89, 109, 705 S.E.2d 28, 39 (2011). Faithful to our standard of review, we recognize that an officer legally can obtain a warrant or the suspect's consent to request a blood draw, pursuant to the Fourth Amendment's mandates. Exigent circumstances also justify a warrantless blood draw in the proper case. *Mitchell*, 139 S. Ct. at 2531. Additionally, breath tests do not intrude greatly into the body, they do not reveal more than one piece of information, and they do not cause more embarrassment than what is inherent in an arrest. *Birchfield*, 579 U.S. at 462–63. Accordingly, we recognize the continued validity of section 56-5-2946, as it authorizes implied consent for breath tests.

## B. Constitutionality under the South Carolina Constitution

Appellant maintains the State violated her right against unreasonable invasions of privacy. We agree.

The South Carolina Constitution provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and *unreasonable invasions of privacy* shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, the person or thing to be seized, and the information to be obtained.

S.C. Const. art. I, § 10 (emphasis added). We have interpreted South Carolina's express right against unreasonable invasions of privacy provision to provide greater—or, a more "heightened"—protection than that provided by the United

States Constitution. *State v. Weaver*, 374 S.C. 313, 321, 649 S.E.2d 479, 483 (2007) (holding ultimately the search in question met the automobile exception to the warrant requirement and did not violate the more expansive right to privacy); *see also State v. Brown*, 423 S.C. 519, 533, 815 S.E.2d 761, 769 (2018) (Beatty, C.J., dissenting) (noting the heightened protection afforded by the state constitution and finding it protected petitioner from the warrantless search of his cell phone). "State courts may afford more expansive rights under state constitutional provisions than the rights which are conferred by the Federal Constitution." *State v. Easler*, 327 S.C. 121, 131 n.13, 489 S.E.2d 617, 625 n.13 (1997). "This relationship is often described as a recognition that the federal Constitution sets the floor for individual rights while the state constitution establishes the ceiling." *State v. Forrester*, 343 S.C. 637, 643, 541 S.E.2d 837, 840 (2001). "South Carolina and the other states with a right to privacy provision imbedded in the search and seizure provision of their constitutions have held such a provision creates a distinct privacy right that applies both within and outside the search and seizure context." *Id*. at 644, 541 S.E.2d at 841.

In the context of medical treatment, we held the State violates the right of privacy when a prison inmate would be forced to take medication solely for the purpose of facilitating execution. *Singleton v. State*, 313 S.C. 75, 89, 437 S.E.2d 53, 61 (1993). Further, we declared, "An inmate in South Carolina has a very limited privacy interest when weighed against the State's penological interest; however, the inmate must be free from unwarranted medical intrusions." *Id*.

In *Forrester*, this Court considered whether the right against unreasonable invasions of privacy requires informed consent to government searches. Although we held in *Forrester* that South Carolina's right against unreasonable invasions of privacy did not require informed consent on the part of the suspect before government searches,[13] we noted the drafters of the constitution were concerned with the emergence of new technology increasing the government's ability to conduct a search. *Id*. at 647–48, 541 S.E.2d at 842–43. Specifically, we recognized the special committee to study the constitution, in drafting the provision, both intended for it to

---

[13] Ultimately, in *Forrester*, we reversed the court of appeals and found that an officer exceeded the scope of Forrester's consent when he searched the contents of her pocketbook beyond a visual inspection in violation of her right against unreasonable invasions of privacy. *Id*. at 648, 541 S.E.2d at 843.

cover electronic surveillance and recognized it would have a far greater impact. *Id*. at 647, 541 S.E.2d at 842. Later, we explained in *Weaver*:

> The focus in the state constitution is on whether the invasion of privacy is reasonable, regardless of the person's expectation of privacy to be searched. Once the officers have probable cause to search a vehicle, the state constitution's requirement that the invasion of one's privacy be reasonable will be met.

374 S.C. at 322, 649 S.E.2d at 483.

In *State v. Counts*, this Court again had an opportunity to expand the analysis in *Forrester* and *Weaver*. In *Counts*, the petitioner argued the "knock and talk" technique done without probable cause or reasonable suspicion violated article I, section 10. 413 S.C. 153, 162, 776 S.E.2d 59, 65 (2015). We looked to other jurisdictions with similar rights against unreasonable invasions of privacy for guidance. *Id*. at 170–71, 776 S.E.2d at 69. However, we did not find a persuasive basis to require an officer to tell a citizen of his or her right to refuse consent to a search. *Id*. at 171, 776 S.E.2d at 69. Continuing the development of the law, we noted there must be some analysis of the privacy interests involved when a warrantless search is made: "Because the privacy interests in one's home are the most sacrosanct, we believe there must be some threshold evidentiary basis for law enforcement to approach a private residence." *Id*. at 172, 776 S.E.2d at 69. In applying the new rule, we upheld the trial court's denial of petitioner's motion to suppress because the findings of fact established law enforcement's reasonable suspicion to conduct the "knock and talk." *Id*. at 173, 776 S.E.2d at 70.

Turning to the instant case, we find the provision in our state constitution is implicated when law enforcement obtains a warrantless blood draw. As the United States Supreme Court recognized in *Schmerber v. California*, there is a constitutional right to privacy in one's blood. 384 U.S. 757, 767 (1966). Because blood draws intrude upon an individual's privacy to a much higher degree, the Court distinguished a blood draw from a breath test in Fourth Amendment jurisprudence precisely. *Birchfield*, 579 U.S. at 463–64. Blood tests require piercing the skin and the extraction of a part of the person's body, and a blood test provides law enforcement with a preservable sample that contains a person's DNA and other medical information besides the BAC reading. *Id*. at 464. The drafters of our constitutional provision were concerned with the emergence of new technology

enabling more invasive searches, and a blood test's process certainly is one of the most invasive government searches a suspect may encounter.

Although the state trooper had, at a minimum, a reasonable evidentiary basis to believe Appellant committed the felony DUI before obtaining the blood draw, Appellant refused consent to the search. In *Counts* and *Forrester*, we held law enforcement was not required to inform the suspect of the right to refuse consent prior to a search; however, had Counts or Forrester nevertheless refused consent, law enforcement would have needed to obtain a warrant to proceed with the search. Because Appellant clearly refused her consent by refusing to sign the implied consent form and she acted inconsistently with consent, the state trooper needed to obtain a warrant to legally proceed with the blood draw under the South Carolina Constitution. Because he ordered the blood draw despite Appellant's refusal, he violated Appellant's right to be free from an unreasonable invasion of privacy.

Nevertheless, we still must closely scrutinize "unwarranted medical intrusions" to effectuate the protection of South Carolina's right against unreasonable invasions of privacy. *Singleton*, 313 S.C. at 89, 437 S.E.2d at 61. At bottom, implied consent, as referred to in the impaired driver statutory scheme, is non-existent outside of matters involving the civil suspension or revocation of driver's licenses. There is no constitutionally approved, statutory per se implied consent to a blood draw. Law enforcement's demand for a warrantless blood test must be founded on an approved exception to the warrant requirement of the Fourth Amendment. A mandatory and forced blood draw is patently distinct from other modes of DUI investigation and, consequently, violates the South Carolina Constitution when administered without a warrant.

## C. Good faith

Even though the warrantless blood draw violated Appellant's rights under the Fourth Amendment and our state constitution, the State asserts the exclusionary rule should not apply because law enforcement acted in good faith. We agree.

The exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Leon*, 468 U.S. 897 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). "[T]he sole purpose of the exclusionary rule is to deter misconduct by law enforcement." *Davis v. United States*, 564 U.S. 229, 246 (2011). The rule does not

apply "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful." *Id*. at 238. In *Davis*, the United States Supreme Court concluded the officers who conducted the search did not violate Davis's Fourth Amendment rights "deliberately, recklessly, or with gross negligence." *Id*. at 240. Where there is no misconduct and no deterrent purpose to be served, suppression of the evidence is an unduly harsh sanction." *State v. Adams*, 409 S.C. 641, 653, 763 S.E.2d 341, 348 (2014).

In *Hamrick*, we held the good-faith exception to the exclusionary rule applied and BAC evidence from the blood test was admissible. 426 S.C. at 653, 828 S.E.2d at 604. The warrantless blood draw occurred on November 14, 2011, two years before the Supreme Court's ruling in *McNeely*. *Id*. at 643, 828 S.E.2d at 598. Because the law seemed to support the existence of exigent circumstances before the *McNeely* ruling, we ruled the officers acted lawfully based on a reasonably good-faith belief. *Id*. at 654, 828 S.E.2d at 604.

Here, Appellant's blood was drawn in the early morning hours of July 10, 2016 pursuant to section 56-5-2946, which had not been directly called into question in this state until *McCall*, over three years later.[14] At the time, *McNeely* only declined to create a categorical exigency in every DUI case. *Birchfield*, though it most seriously calls into question the validity of implied consent, was only released three weeks before the blood draw in this case and dealt only with a blood draw as a search incident to arrest. When Appellant's blood was drawn, the state trooper reasonably relied on section 56-5-2946 and did not violate Appellant's rights deliberately, recklessly, or with gross negligence. At trial, the state trooper testified he was trained to not seek a warrant before a blood draw in the situation of a felony DUI. He relied on this training when making the decision to draw Appellant's blood that night.

Therefore, we hold the good-faith exception applies because of the state trooper's reasonable reliance on section 56-5-2946 and its uncertain validity at the time.[15] Although the state trooper violated Appellant's rights under both the Fourth

---

[14] *McCall* was heard on May 30, 2019 and filed on February 5, 2020.

[15] Because we find the good-faith exception to the exclusionary rule applies, we do not need to address the State's harmless error argument. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999)

Amendment and South Carolina's Constitution, exclusion is not warranted. We are confident law enforcement will take care to use section 56-5-2946 in accordance with what the South Carolina Constitution and the Fourth Amendment require.[16]

## IV. CONCLUSION

The state trooper violated Appellant's rights under the Fourth Amendment and South Carolina's Constitution when he obtained the blood draw under section 56-5-2946 without a warrant. However, the state trooper acted in good faith based on the law existing at the time.

Despite its unconstitutional application here, section 56-5-2946 remains facially constitutional. We recognize a suspect may consent to chemical testing, and even revoke consent, as section 56-5-2946 contemplates. Additionally, we acknowledge the lower privacy interests at stake in breath analyses under the statute. Our holding today only invalidates the law enforcement practice of obtaining blood samples for BAC testing when a warrant has not been obtained, no other exceptions to the warrant requirement justify the search, and the suspect neither consents nor revokes her consent.

**AFFIRMED.**

**Acting Justice Kaye G. Hearn, concurs. FEW, J., concurring in a separate opinion. JAMES, J., concurring in a separate opinion in which KITTREDGE, J., concurs.**

---

(declining to address petitioner's remaining issues when the first issue was dispositive).

[16] "Responsible law enforcement officers will take care to learn 'what is required of them' under Fourth Amendment precedent and will conform their conduct to these rules." *Davis*, 564 U.S. at 241 (quoting *Hudson v. Michigan*, 547 U.S. 586, 599 (2006)).

**JUSTICE FEW:** I concur in result. The Court is deciding this case by addressing the wrong issue. The question before us is not whether the implied consent statute is unconstitutional, but rather whether the State demonstrated the consent exception applies to excuse the Fourth Amendment's warrant requirement. German's implied consent is one circumstance to be considered in answering that question. I believe the consent exception does apply, and thus, I agree the trial court did not err in denying German's motion to suppress. I firmly disagree that our implied consent statute is unconstitutional, even as applied to German.

As I wrote for a unanimous Court in *Hamrick v. State*, 426 S.C. 638, 828 S.E.2d 596 (2019), "pursuant to South Carolina's implied consent statute," a defendant in a felony driving under the influence case "is deemed by law to have consented to have his blood drawn by virtue of driving a motor vehicle in South Carolina." 426 S.C. at 654, 828 S.E.2d at 604. Under our implied consent law—subsections 56-5-2950(A) and 56-5-2946(A) of the South Carolina Code (2018)—German impliedly consented to the warrantless blood draw conducted in this case. German's motion to suppress the results of the blood draw, however, was based on the Fourth Amendment. Under the Fourth Amendment, the fact the implied consent law required her to consent before she was allowed to drive does not alone answer the question of whether the consent exception excused the otherwise applicable requirement the officer obtain a search warrant. Rather, German's implied consent is one circumstance a court must consider in determining whether the blood draw was a reasonable search and seizure under the Fourth Amendment. *See State v. Alston*, 422 S.C. 270, 288, 811 S.E.2d 747, 756 (2018) ("The existence of voluntary consent is determined from the totality of the circumstances." (quoting *State v. Provet*, 405 S.C. 101, 113, 747 S.E.2d 453, 460 (2013))). If the consent exception does not apply, that does not make the implied consent statute unconstitutional; it simply means the State failed—on the unique facts of this or any case—to demonstrate the consent exception excused the warrant requirement, and therefore, the search was unreasonable under the Fourth Amendment. *See id.* ("When the defendant disputes the voluntariness of his consent, the burden is on the State to prove the consent was voluntary." (quoting *Provet*, 405 S.C. at 113, 747 S.E.2d at 460)); *State v. Frasier*, 437 S.C. 625, 638, 879 S.E.2d 762, 769 (2022) (stating warrantless searches are unreasonable under the Fourth Amendment unless an exception to the warrant requirement applies). Thus, the question before this Court is a Fourth Amendment question, not a question of the constitutionality of the implied consent statute.

In this case, the trial court erred by failing to consider the totality of circumstances affecting whether German consented to a search and seizure without a warrant. The majority has now done that and concluded the consent exception does not apply. I would find under the totality of circumstances in this case the consent exception does apply.

First, I would put great weight on implied consent. *See generally Mitchell v. Wisconsin*, 588 U.S. ___, ___,139 S. Ct. 2525, 2532-33, 204 L. Ed. 2d 1040, 1045-46 (2019) (explaining the Supreme Court's historical approval of "many of the defining elements" of implied consent statutes). German—like all adults who hold a driver's license in South Carolina—is an adult. She made a voluntary decision to accept the privilege of driving in this State in exchange for granting consent to have her blood drawn under the circumstances of this case.

Second, I would put little weight on the fact German was agitated and drunk in the emergency room. The officer testified German was "very belligerent, and was giving the hospital personnel a very hard time." The treating physician testified, "I remember [German] because she was extremely belligerent and rude to staff." The physician said German stuck out in her memory "because she was trying to bite nurses, spitting at us, yelling at us, cursing at us." This disruptive behavior does not indicate a lack of consent, but rather, is typical of someone who is extremely drunk. The fact a suspect is agitated, belligerent, and extremely drunk does not affect the person's capacity to consent to a search. *See United States v. Watters*, 572 F.3d 479, 483 (8th Cir. 2009) (recognizing intoxication is a circumstance to be considered as to whether consent is voluntary, "but intoxication alone does not render consent invalid"); *United States v. Rambo*, 789 F.2d 1289, 1297 (8th Cir. 1986) (noting "the mere fact that one has taken drugs, or is intoxicated, or mentally agitated, does not render consent involuntary"). Importantly, German was not intoxicated when she voluntarily granted consent under the implied consent law.

Third, the officer read German a form stating, as the officer described it, "she doesn't have to take the test or give the samples." As the majority explains, the officer read German the wrong form. Under the Fourth Amendment, however, the error weighs in favor of a finding of voluntary consent because the "correct" form does not

indicate the suspect may refuse the test.[17] The fact the officer told German she did not have to allow the blood draw—which the officer was not required to do under the Fourth Amendment—is important in the totality of circumstances affecting whether the consent exception applies. *See Frasier*, 437 S.C. at 638, 879 S.E.2d at 769 ("Police do not need to tell an individual that he can refuse to consent, but it is a factor in the overall analysis." (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S. Ct. 2041, 2058, 36 L. Ed. 2d 854, 875 (1973); *State v. Forrester*, 343 S.C. 637, 645, 541 S.E.2d 837, 841 (2001))); *Forrester*, 343 S.C. at 645, 541 S.E.2d at 841 ("The lack of [a] warning [that a suspect may refuse consent] is only one factor to be considered in determining the voluntary nature of the consent." (citing *State v. Wallace*, 269 S.C. 547, 552, 238 S.E.2d 675, 677 (1977))); *Wallace*, 269 S.C. at 552, 238 S.E.2d at 677 ("[K]nowledge of the right to refuse consent to search is merely another factor to be considered in the 'totality of the circumstances' in determining the voluntariness of the consent to search." (citing *Schneckloth*, 412 U.S. at 248, 93 S. Ct. at 2058, 36 L. Ed. 2d at 875)).

As to the fact German did not sign the form, there is no evidence she "refused" to sign it. Rather, the evidence indicates she was too unruly to even realize she was being asked to sign it. The officer testified "she really didn't want to listen . . . and there was no way she was going to sign this paperwork." He explained it is his policy to write "refused to sign" when confronted with such disruptive behavior. Nobody testified German actually refused to sign. For all we know, she did not sign the form because she believed doing so was unnecessary in light of the implied consent law. It is not for this Court to speculate as to her reasons for not signing the form. In any event, when a suspect actually refuses to sign such a form, the refusal does not by itself invalidate the implied consent. It is only part of the totality of the circumstances a court must consider in determining whether the State has demonstrated voluntary consent under the Fourth Amendment.

Fourth, the phlebotomist who actually drew the blood testified German "was willing to have the blood drawn." I would put the most weight on this fact, that when the officer told German "like it or not, we are getting a blood draw," she willingly gave

---

[17] The "correct" form under the felony DUI statute provides, "Pursuant to Section 56-5-2946, you must submit to either one or a combination of chemical tests for the purpose of determining the presence of alcohol [or] drugs . . . ." Rec. on Appeal at 349, *State v. McCall*, 429 S.C. 404, 839 S.E.2d 91 (2020) (No. 2015-001097).

the sample. At the actual time of the blood draw, therefore, she gave no indication she refused the test. This compelling fact tips the totality of the circumstances and—in my view—requires a finding that she voluntarily consented to the blood draw.

In summary, German made a voluntary decision to grant consent for a Fourth Amendment search and seizure when she accepted a license to drive in this State. In the emergency room the night of the incident, she was told she did not have to allow the blood draw, but she willingly did so. There is nothing in this record that indicates German withdrew or revoked the consent she impliedly gave. Under the totality of the circumstances, I would find German voluntarily consented to have her blood drawn and the consent exception excused the warrant requirement.

The majority wrongly focuses on the constitutionality of the implied consent law. Our implied consent statute should be read to place implied consent into the Fourth Amendment analysis as one circumstance indicative of voluntary consent. Reading the statute in this way, we fulfill our obligation to interpret our statutes as constitutional, if possible. *See State v. Ross*, 423 S.C. 504, 514-15, 815 S.E.2d 754, 759 (2018) (recognizing we must construe statutes as constitutional if possible and finding a way to read a subsection of the Sex Offender Registry Act as constitutional (citing *Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999))).

**JUSTICE JAMES:**  I concur in Chief Justice Beatty's well-reasoned opinion in all respects except for section III.B., in which he addresses Article I, section 10 of the South Carolina Constitution.  Because the analysis of constitutionality under the Fourth Amendment to the United States Constitution resolves this appeal, there is no need to address the heightened protection afforded by Article I, section 10.

**KITTREDGE, J., concurs.**